## MILLS & CO. V. COLLINS ET AL.

1. **Fraud:** AS DEFENSE TO CONTRACT: HOW PLEADED. While fraud is a good defense to a contract, it is not sufficient to plead it in general terms. The specific statements and acts relied upon as constituting the fraud must be set out, and, if these do not show fraud, the pleading is insufficient, and may be assailed by demurrer.

2. **Contract:** FOR PURCHASE OF SCHOOL FURNITURE: FRAUDULENT IMPOSITION UPON MEMBERS OF SCHOOL BOARD: INDIVIDUAL LIABILITY. Where certain members of the board of school directors of a district township were induced by plaintiffs to sign a contract to pay for certain school furniture to be bought of plaintiffs, upon the false representation that the president of the board had agreed to and would sign it,—the validity of the contract being conditioned by its terms upon its being signed by a majority of the board,—*held* that it was void, on account of fraud, as to those who signed it upon the false representation above stated; and that, since without their signatures it was not signed by a majority of the board, it was not binding upon the others who signed it without being misled by such misrepresentations.

3. **School Directors:** FORESTALLING DELIBERATE ACTION BY PERSONAL OBLIGATIONS: PUBLIC POLICY: FRAUD. Contracts artfully drawn for the purpose of capturing the members of school boards separately, by involving them in a personal obligation, and thus forestalling their deliberate and untrammeled action as a board, are not in accord with public policy, and are not to be favored in law; and, when fraud is added in obtaining the signatures of members, such a contract cannot be upheld. For example see opinion.

*Appeal from Polk Circuit Court.*

WEDNESDAY, OCTOBER 21.

ACTION upon a contract of purchase. The defendants pleaded that their signatures to the contract were procured by fraud, setting out in what the fraud consisted. The plaintiffs demurred to the answer, and the court overruled the demurrer. The plaintiffs electing to stand upon their demurrer, judgment was rendered against them for costs. They appeal.

*Cole, McVey & Clark*, for appellants.

*T. F. Stevenson*, for appellees.

ADAMS, J.—The contract sued on is in these words:

" In consideration of the following goods, viz., eleven large state maps and eleven geographies, bought by us of Mills & Co., we agree to pay them at Des Moines, Iowa, one hundred and ten dollars on or before the first day of May, 1884, provided a majority of the following-named persons, John Ryan, T. J. Cowman, Andrew Collins, J. G. Cowman, John Hayes, Wm. Danley, Thos. Kane, John Owens, J. E. Fleck, Ed. Churchill, John Worley, shall sign this agreement. Nevertheless, the issuance and delivery to Mills & Co. on or before the first day of May, 1884, a valid school order of the district township of Des Moines, Jasper county, Iowa, for said amount, payable as above, shall be received by them in full payment thereof.  " ANDREW COLLINS.

    [Signed]      . " J. E. FLECK.

    . " J. G. COWMAN.

    " T. J. COWMAN.

    " JOHN OWENS.

    " WM. DANLEY.

    " ED. CHURCHILL."

The defendants, for answer, averred " that they were, at the time the contract set out in said petition is claimed to have been executed, and now are, members of the school board in and for Des Moines township, Jasper county, Iowa, and John Ryan was and now is president of said board; that the signatures of Andrew Collins and T. J. Cowman to said contract were obtained on the condition and representation by plaintiffs that said John Ryan, president of said board, had agreed to and would sign said contract; and, relying, on said condition and representation, they, the last named defendants, signed said contract; that the signatures of John Owens, J. G. Cowman and J. E. Fleck to said contract were obtained

on the condition and representation by plaintiffs that the said president had agreed to call, and desired to call, a meeting of said board for the purpose of determining whether or not they would, as a board, purchase said maps and geographies, and that said president desired the last-named defendants to sign said contract as indicating a desire to have said meeting called and willingness to be present at the same; and, relying upon said representations, the said defendants last named signed said contract for said purpose, and no other; that the said signatures of Wm. Danley and Ed. Churchill to said contract were obtained on the condition and representation that the other defendants had signed said contract unconditionally and absolutely, and that a majority of the said board had agreed to said contract; that none of said conditions have happened, and all of said representations were false and fraudulent, and were the inducements to the defendants to sign said contract."

The plaintiffs demurred to the answer, "(1) because the facts pleaded therein as a defense constitute no legal defense to the action; (2) because the suit is brought on a printed and written instrument admitted to be signed by the defendants, which is plain and specific in its terms, and the facts set forth in the answer are not such as to defeat the liability of the makers of said contract."

This is a law action, and it is somewhat doubtful whether the demurrer is sufficiently specific to properly raise any question for our consideration. But, in view of the way in which the case appears to have been submitted below, we will treat the demurrer as raising all the objections to the answer which are now raised in the plaintiffs' argument. Before proceeding to consider specifically the objections urged, we desire to say in a general way that the answer is not well drawn. The defendants seem to rely upon two distinct defenses: the breach of a parol condition of the contract, and fraud by which the defendants were induced to sign it; and yet these defenses are not pleaded in separate divisions, but

are mingled together as if the pleader thought that they were substantially the same thing. If the breach of an alleged parol condition had been separately pleaded, the plaintiffs might have successfully assailed by demurrer that division of the answer, because no evidence would have been admissible to show the parol condition, the alleged breach of which is relied upon as a defense. The plaintiffs should, we think, have moved for an order that the defendants be required to plead their defenses in separate divisions, or else should have moved to strike out what is alleged in respect to the breach of a parol condition. But they saw fit to demur to the answer as a whole, and if it contains any allegations which constitute a defense the demurrer was properly overruled.

1. FRAUD: as defense to contract: how pleaded.. Fraud is a good defense to a contract, but it is not sufficient to plead fraud in general terms. The specific statements and acts relied upon as constituting the fraud must be set out. If these do not show fraud, the pleading is insufficient, and may be successfully assailed by demurrer.

The plaintiffs contend that the representations set out by the defendants as fraudulent are not sufficient to sustain a plea of fraud. As to some of them we have to say that we think that perhaps this may be true, but as to others we think it is not true. It is alleged that the plaintiffs represented that the president, John Ryan, had agreed to sign the contract, and that the representation was false. This, while not properly pleaded as a condition, did, we think, show fraud. If he had in fact agreed to sign it, the defendants, it may be conceded, would not be released by reason of his failure to sign it. They would not be allowed to say that they relied upon his signing. There was not only no agreement, written or by parol, that he should sign it, but the defendants were to be bound if a majority signed it, and that, too, though the majority signing it did not include Ryan. But, while this is so, Collins and T. J. Cowman have a right to say that they

2. CONTRACT: for purchase of school furniture: fraudulent imposition upon members of school board: individual liability.

were influenced by the plaintiffs' statement that Ryan had agreed to sign it. The fact of his agreement was the important thing, probably, to them, whether carried out or not. The agreement, if made, though it should never be carried out, they might well think indicated beyond question his judgment as president of the board; and if others, amounting to a majority, actually signed, they might feel assured that a meeting would be called, and a school order would be drawn and substituted for this contract. We may assume that these goods were not purchased for the defendants' individual use, but for the use of the district, and would not have been purchased but for the expectation which the defendants had that they would be paid for by the district. Whatever representations, therefore, were made to them by the plaintiff for the purpose of creating a confidence in this respect, and having this effect, and determining their action in signing the contract, were, we think, fraudulent, if false, and made with the intention of deceiving and misleading.

In connection with these false representations, it is proper that we should consider the contract which the defendants were asked to sign. The more it is examined

3. SCHOOL directors: forestalling deliberate action of by personal obligations: public policy: fraud.

the more it will be seen that it is a very ingenious device. It was drawn with the purpose of capturing the members of the board separately, and forestalling their deliberate and untrammeled action as a board. The moment a member signed he was in no proper condition thereafter to act as a member of the board in the same matter. The majority became committed, by reason of their personal liability, to the purchase of the goods for the district, and without any hearing from the minority. The law contemplates that no liability of this kind should be imposed upon the district except by the members of the board duly convened at a board meeting, and sitting in consultation. The object of the contract was to thwart the law by destroying the board's deliberative character. The evil of such a practice is far greater than would

naturally occur to the minds of most men who compose our boards of school directors. In the practice of obtaining such contracts we may assume that those members are approached who are understood to be most susceptible to the arts of a skillful canvasser. The practice, at least, affords an opportunity for approaching that class, and for avoiding the stronger and more independent members. Now, if in addition, signatures can be lawfully obtained upon the false representation that the stronger and more independent members have agreed to sign or approve the purchase, then the law is powerless to prevent a great evil. It may, perhaps, be said that Collins and T. J. Cowman had no right to allow themselves to be influenced by the false supposition in regard to Ryan's judgment and desires. But it is not for the plaintiffs to say this, who created the false supposition. Besides, if Collins and Cowman were to put themselves in a position which should forestall their deliberative action as members of the board, it was not improper that they should consider Ryan's judgment and desires.

Taking the allegations of the answer to be true, we think that Collins and Cowman were drawn by the plaintiffs into a contract which they had reason to believe that the district would assume, and that belief was grounded in part, at least, upon a false and fraudulent statement made by the plaintiffs to induce the contract.

Having reached this conclusion, it is not necessary to consider the other questions. If Collins and T. J. Cowman are not holden, the other defendants are not; for without the former the contract would not be signed by a majority, and, according to its own terms, would bind no one. We think that the demurrer was properly overruled.

AFFIRMED.