JOHN BANCROFT, JR., *vs.* MADELEINE DUPONT BANCROFT and MAX HIEBLER, JR.

1. INFANTS—GUARDIAN AD LITEM OF INFANT PARTY—POWER OF COURT.

The court has inherent power to appoint a guardian *ad litem* for an infant defendant properly served with process.

2. DIVORCE—GROUNDS—ADULTERY—PLEADINGS.

An answer in a suit by a husband for divorce for the adultery of the wife, which alleges that at divers times within a special period the husband committed adultery with divers persons at divers places not known to the wife, and proof of which she has not fully obtained, and is therefore unable to state with more particularity the facts, is insufficient, and will be stricken out on motion.

3. DIVORCE—GROUNDS—ADULTERY—JUSTIFICATION.

A wife, who is sued for divorce for adultery, may not interpose as a defense the husband's extreme cruelty.

4. INFANTS—ACTIONS—GUARDIAN AD LITEM—PLEADINGS.

An answer of an infant defendant, for whom a guardian *ad litem* has been appointed, may only be interposed by the guardian.

5. CONTINUANCE—ABSENT WITNESS—DILIGENCE.

In divorce cases, the first term after the bringing of the suit is the trial term as well as the appearance term, and a defendant must make reasonable effort to be ready for trial at the first term; but a failure to take out a commission to procure the testimony of non-resident witnesses immediately after

the action is docketed, so as to be prepared for trial at the first term, does not show want of diligence, and a continuance to obtain the testimony may be granted.

6. CONTINUANCE—GROUNDS—COMMISSION TO PROCURE TESTIMONY OF NON-RESIDENT WITNESSES—RULES OF COURT.

Rules of court governing the taking of the testimony of non-resident witnesses and relative to continuances must be construed with reference to the circumstances of the particular case and the statutes increasing the number of terms of court.

7. CONTINUANCE—TRIAL—DUE DILIGENCE.

The rules of court governing the taking of testimony of non-resident witnesses and continuances will be liberally construed in divorce cases, so that they may be heard on their merits, though a defendant, desiring a commission to procure the testimony of non-resident witnesses, must exercise due diligence in preparing for trial.

8. DIVORCE—PLEADINGS—ADULTERY.

Where a wife, when sued for divorce on the ground of her adultery, defended on the ground of recrimination, the answer, alleging the adultery of the husband, must set forth the defense with the same particularity and specification as is required in the libel for divorce.

9. DIVORCE—PLEADINGS—ADULTERY.

An answer in a suit by a husband for divorce for the adultery of the wife, which alleges that at divers times between December 28, 1908, and the commencement of the action in 1911, plaintiff committed adultery with a woman named, at a city named, and at divers times during the same period committed adultery with another woman at the same place, is too broad as to time.

10. DIVORCE—TRIAL—COMMISSION TO TAKE TESTIMONY OF NON-RESIDENT WITNESSES.

24 *Del. Laws, c.* 221, § 18, as amended by 25 *Del. Laws, c.* 213, § 5, providing that all trials for divorce shall be had before the court, and shall be public, except for sufficient reasons, requires hearings and trials in divorce cases before the court, instead of before a commissioner, as was the practice before the statute, and the hearings are subject to the same laws as govern other trials in open court, so far as the taking and introduction of testimony is concerned, and a commission to take the testimony of non-resident witnesses may be issued.

11. EQUITY—ADDITIONAL ANSWER—GROUNDS.

Before granting leave to file an additional answer, it must appear by affidavit that the new matters set forth have come to the knowledge of defendant since the filing of the original answer, and that the delay in presenting the same is not due to any want of diligence before or since the filing of the original answer or to delay the final hearing.

12. DIVORCE—EVIDENCE—ADMISSIONS—ADMISSIBILITY.

24 *Del. Laws, c.* 221, § 20, prohibiting a decree of divorce unless the cause therefor is shown by affirmative proof, aside from any admissions of defendant, does not exclude confessions; but, where evidence tending to establish the charge has been introduced, it is competent to prove a confession.

13.  DIVORCE—ADULTERY—EVIDENCE—ADMISSIBILITY.

In a suit by a husband for a divorce for the adultery of the wife, and for a decree establishing the illegitimacy of a child of the wife, admissions of the wife's adultery cannot be excluded, merely because they tend to prove the illegitimacy of the child.

14.  DIVORCE—ADULTERY—EVIDENCE—ADMISSIBILITY.

In a suit by a husband for divorce for the adultery of the wife, and for the establishment of the illegitimacy of a child of the wife, non-access of the husband with the wife during the period of gestation may be proved.

(*September* 20,—*November* 11, 1911.)

PENNEWILL, C. J., and CONRAD and WOOLLEY, J. J., sitting.

*J. Harvey Whiteman* for plaintiff.

*T. Bayard Heisel* for defendant.

Superior Court, New Castle County, September and November Terms, 1911.

ACTION OF DIVORCE FOR ADULTERY (No. 20, September Term, 1911), by John Bancroft, Jr., against Madeleine du Pont Bancroft and her infant for divorce for adultery of the wife, and for the establishment of the illegitimacy of Max Hiebler, Jr., the infant.  Decree of divorce and decree establishing illegitimacy entered.

A motion for the appointment of a guardian *ad litem* for an infant defendant, duly served with process in an action commenced against his mother and him was made by plaintiff, based upon two grounds, viz.:

*First*, the statute of the State of Delaware;

*Second*, by virtue of the inherent power of the court under the common law.

PENNEWILL, C. J., delivering the opinion of the court:

[1]  After reading the many cases cited in the brief you submitted to us, Mr. Whiteman, we have no doubt that the court has the inherent power to appoint a guardian *ad litem* for an infant defendant, where a suit has been commenced against him, and he has been properly served with process.

All the cases seem to hold that the courts will so far protect the infant as to see that he is properly served with process, and that a guardian *ad litem* is appointed to manage his defense.

As was said by the court in the case of *King v. Collins*, 21 *Ala.* 363, "we know it is the duty of all courts to see that the interest of an infant, who is a party to a suit before it, is properly protected, and this can only be done by appointing some one to supervise and protect his rights, where there is no one else who can or will do it."

It appearing to us from the affidavits filed that the defendant, for whom we are asked to appoint a guardian *ad litem*, has been properly served with process, and is an infant, we are prepared to make the appointment when a suitable person is suggested.

[2-4]   Plaintiff's counsel further moved to strike out those parts of the answer which appear below, on the grounds, *first*, that the alleged acts of adultery by the plaintiff were not averred with sufficient particularity; *second*, that the defendant could not recriminate by charging cruelty as a defense in an action of divorce for adultery, it being urged that the recrimination must be of a like offense as that complained of in the action for divorce.   He also moved to strike out the whole answer in so far as it related to Max Hiebler, Jr., because it is not competent for any one other than guardian to file an answer for an infant defendant.

After hearing argument, the court made the following order:

"And now, to wit, this twenty-fifth day of September, A. D. 1911, upon motion of J. Harvey Whiteman, attorney for the plaintiff, and after hearing argument by counsel for the plaintiff and for Madeleine Du Pont Bancroft, one of the defendants,

"It is adjudged, ordered and decreed that sub-section C of paragraph second of the answer filed in the above stated cause, reading as follows, to wit:

" 'At divers times within the period aforesaid the plaintiff has committed adultery with divers other persons and at divers places not as yet fully known to this defendant and proof of which she has not yet fully obtained and is therefore unable to state with more particularity at the present time, but which she expects to be able to obtain and submit and prove to the court at the trial of this cause,'

—and that that part of paragraph third reading as follows, to wit:

" 'On the contrary, the defendant avers that the plaintiff has been guilty of extreme cruelty, such as to endanger the life and health of the defendant and to render cohabitation unsafe, because of which extreme cruelty the defendant has filed simultaneously with this answer, her petition or libel in this court for a divorce a *vinculo matrimoni*, entered into with this plaintiff,'
—be and the same are hereby stricken out of the said answer, as far as the same relates to the defense of the said Madeleine Du Pont Bancroft; and that the whole of the answer be stricken out so far as it relates to the infant defendant."

The court appointed a guardian *ad litem* for the infant defendant by the following order:

"Whereas, it appears by the return of the sheriff to the summons issued in the above stated case that service of the said summons was made personally upon Max Hiebler, Jr., one of the defendants in the above stated case, on the fifth day of June, A. D. 1911, by the sheriff of New Castle County, aforesaid:

"And whereas, it appears by the affidavits in the above stated case that the said Max Hiebler, Jr., is an infant of tender years;

"And whereas, counsel representing the plaintiff in the above stated case move the court for the appointment of a guardian *ad litem* to represent the said Max Hiebler, Jr., in the above stated cause;

"And whereas, argument was heard upon said motion for the said guardian *ad litem;*

"Now, therefore, on this twenty-fifth day of September, A. D. 1911, upon consideration of the foregoing petition and proof of personal service of the summons upon the said Max Hiebler, Jr., the court hereby appoints Thomas B. Heisel as guardian *ad litem* for the said Max Hiebler, Jr., with authority to appear for him and make defense for the said Max Hiebler, Jr., in the above stated case."

After said appointment the answer of the infant defendant was filed by his guardian.

A commission to take testimony orally in a foreign country on behalf of the defendant without interrogatories was issued

under the rules of court, on the eighteenth day of October, 1911, returnable to the November term, 1911.

The court then consisted of PENNEWILL, C. J., and RICE, J.

The commissioner made return of the commission at the November term of said court, stating that he had not sufficient time to take testimony and return it to the present term of court. November tenth counsel for the defendants applied to the court to have the commissions continued to the January term of the court.

Counsel for plaintiff opposed the continuance because, he contended, due diligence had not been exercised, and also because the defendant had not complied with the rules of court respecting continuances at the second trial term.

PENNEWILL, C. J., delivering the opinion of the court:

[5]    In the matter of the application for a continuance of the commission to take testimony in the case of *John Bancroft Jr. v. Madeleine Du Pont Bancroft and Max Hiebler, Jr.*, and also for a continuance of said case, to the January term, we have carefully considered the arguments of counsel, and are now prepared to render a decision. It is true, as contended by plaintiff's counsel, that in divorce cases the first term after the suit is brought is the trial term; but, it is also the appearance term. While it is necessary that the defendant should make every reasonable effort to be ready for trial at the first term, we are not prepared to hold that he is guilty of laches, and has not used due diligence, if he fails to take out his commission to procure the testimony of non-resident witnesses immediately after the action is docketed so as to be prepared for trial at the first term.

[6]    Because of the frequent terms of court under the present law it would be practically impossible in many cases for the defendant to be ready for trial at the first term if the witnesses were residents in a foreign country and their testimony had to be taken by commission under the rules of court now in force, which were published before the passage of the act which increased the number of the terms of court in this county.

We think the rules of court governing the taking of the testimony of non-resident witnesses, as well as the rules and practice relative to the continuance of cases to be taken in connection therewith, should be construed with due regard to present conditions and the facts and circumstances of the particular case. So construed, we are of the opinion that under all the facts and circumstances of the present case the defendant has not been guilty of such laches, or so failed to exercise due diligence in procuring the testimony of the non-resident witnesses resident in Germany, as to be precluded from having the commission, as well as the case, continued to the January term.

[7] We will say, generally, that especially in divorce cases, if there is a defense to the action, the court desire, and public policy requires, that it shall be heard if it can be consistently with the law and the rules and practice of the court.

We do not mean by this, of course, that a defendant is not required to exercise due diligence in preparing for trial. He must not sleep upon his rights, take advantage of his own laches or disregard any rule or practice of court. But we do mean that the rules of court governing the taking of testimony of non-resident witnesses will be liberally construed in divorce cases so that they may be heard and determined upon their merits.

It is ordered by the court that the commission issued since the last term of court, and returned to the present term unexecuted for lack of time, be continued to the next term, and that the case be likewise continued.

Counsel for defendant thereupon asked to file the following answer alleging recrimination, viz.:

"Madeleine Du Pont Bancroft, the defendant, saving and reserving unto herself all and all manner of objections and exceptions to the manifold errors and imperfections of the petition or libel of which she may avail herself by plea or demurrer, for further answer to the said libel, by leave of the court first had, saith:

"That John Bancroft, Jr., the said plaintiff, being at the time sojourning in Munich, Bavaria, Empire of Germany, in vio-

lation of his marriage vow for a period of two years and upwards last past has given himself up to adulterous practices, that is to say:

"(a) At divers times between the twenty-eighth day of December, 1908, and the commencement of this action, the said plaintiff committed adultery with one Ella Mahl, at Munich, Bavaria, Empire of Germany, the particular locality or localities in the said City of Munich being to the defendant at present unknown.

"(b) At divers times between the twenty-eighth day of December, 1908, and the commencement of this action, the said plaintiff committed adultery with one Hilda Metzkopp Kirchseeon, at Munich, Bavaria, Empire of Germany, the particular locality or localities in the said City of Munich being to the defendant at present unknown."

*Mr. Whiteman*, for plaintiff, objected, on the ground of insufficiency of particularity as to the times of the alleged acts of adultery. *Mr. Heisel*, for defendant, contended that in the answer it was not necessary to allege time and place, with the same particularity as in the libel.

PENNEWILL, C. J.:—[8, 9] In 2 *Woolley on Delaware Practice*, at *section* 1636, we find the following:

"When the respondent's defense amounts in substance to a traverse of the allegations contained in the libel, and does not embrace matters of condonation, recrimination or other special defenses, a formal answer to the libel is unusual and unnecessary. As the libellant must prove the averments of the libel in support of his case, so the respondent, without formal answer, may introduce any evidence that is in contradiction of the libellant's proof.

"When divorce is sought on the ground of adultery, the statute provides, that 'if the defendant shall recriminate and prove that the complainant has been guilty of the like crime; or has admitted the defendant into conjugal society or embraces after knowledge of the adultery; or that the complainant, if a husband, allowed of his wife's prostitution, the petition shall be dismissed.' Such defenses, as it appears, partake of the nature of confession and avoidance, or if the allegations of the petition

are denied, as they may be, and recrimination, condonation or the allowing of the wife's prostitution is at the same time relied on, the defense amounts to a plea of an exception to the statute allowing divorce for the cause of adultery. In either case, or in any case, where the respondent relies upon an exception to the statute, and defends upon the ground of recrimination, condonation or the husband's assent to his wife's prostitution, the defense is not a traverse, but sets up new matter, and must be specially pleaded. Defenses of the characters embraced within these exceptions of the statute should be pleaded and shown by an answer. The answer should set forth the matters of defense with the same particularity and specification as are required in the libel, for if by the answer the adultery is admitted, but recrimination or condonation is relied upon to constitute an exception to the libellant's right to a divorce, the burden of proof is shifted, and the respondent is required to prove that she is within the exception of the statute. The libellant is entitled to this particularity, because such a defense, in substance, constitutes a charge against him, concerning which he has a right to be fully informed, so that he may either contradict it or prove acts of adultery subsequent to the acts relied upon as a defense."

That seems to be the law in this state, and, we think therefore, the averment in the answer, as to time, is too broad.

Counsel for the plaintiff moved that the orders heretofore made for the issuance of commissions to take the testimony of non-resident witnesses on behalf of one of the defendants be annulled, on the ground that under the law of this state testimony so taken cannot be used in divorce cases.

PENNEWILL, C. J., delivering the opinion of the court:

[10] A determination of the question raised by the motion involves a construction of *Section* 18, *Chapter* 221, *Volume* 24, *Laws of Delaware*, entitled, "An act regulating annulment of marriage and divorce."

The said section as amended by *Section* 5, *Chapter* 213, *Volume* 25, *Laws of Delaware*, reads as follows: "All hearings and trials shall be had before the court, and not before a master, referee or

any other delegated representative, and shall be public, provided that, for reasons appearing sufficient to the court, the hearings and trials may be had before the court privately in chambers."

We think all that was intended to be accomplished by the section mentioned was to change the method or procedure of hearings and trials in divorce cases, so that they should be had before the court instead of before a commissioner, as was the case prior to the enactment of the statute referred to; and further, that all such hearings and trials should be public, except such as the court believed, for sufficient reasons, should be had privately.

The court are clearly of the opinion that hearings or trials of divorce cases under the present law, are subject to, and are to be governed by, the same laws and rules as govern other trials in open court, so far as the taking and introduction of testimony is concerned, and the motion of the plaintiff is, therefore, refused.

Before BOYCE and RICE, J. J.

*Mr. Heisel*, for defendant, asked further leave to file an additional answer. *Mr. Whiteman*, for plaintiff, objected, as on the former occasion, that the alleged answer was not sufficiently particular. The paper was handed to the court.

BOYCE, J.:—Mr. Whiteman, we have read the proposed answer. We will hear you.

*Mr. Whiteman:*—My objection is that the answer gives me no notice, and is a subterfuge for one that was attempted to be filed here last week. In matters of this kind, the courts have required great particularity, and the rule of court is that the answer is required to be of the same particularity as the petition. While it is addressed to the discretion of the court, yet it is a judicial discretion, which the court will exercise according to well established rules.

In cases of adultery the name of the person is always required. We, however, have a few isolated cases going to this extent: that if the name of the person and the specific residence are given, you may allow some latitude as to time; and the reverse of that is true—that with the name of the person, and being specific as to time, some latitude as to place will be allowed. The place is laid in Munich, a foreign city containing from 250,000 to 300,000

inhabitants; the name of some person, and the month and year are mentioned. We have no means of finding out whether a fictitious person is named or not. I have no means of directing the defendant's attention to where he was or to any particular house or any particular street.

*Mr. Heisel:*—All charges in connection with this case are laid in Germany. Last week I offered as a further answer to this cause an affidavit covering an answer similar to the one presented to the court today. The court refused to allow me to file that answer on the ground that it was not sufficiently specific as to time. Just as soon as it was possible for me to fix the time more definitely from information which I had to obtain from Germany, I prepared this further answer which I have presented to the court.

There are many cases holding that the month and the year which are alleged is definite enough. In *Addicks v. Addicks*, 1 *Marv.* 338, 41 *Atl.* 78, the court held that if the year was named that it was sufficiently definite. *Black v. Black*, 26 *N. J. Eq.* 431; *Bishop on Marriage, Divorce and Separation*, § 1340.

RICE, J.:—Mr. Heisel, in filing the further answer, you do not mean that that answer supplements so much of the other answer as it stands now?

*Mr. Heisel:*—Yes, sir.

RICE, J.:—There is an answer filed. Does this take the place of the old answer?

*Mr. Heisel:*—No, sir; this supplements the old answer. It is an additional, further answer. I am not filing it as a substitute for, or an amendment to the old answer, but as an additional answer.

BOYCE, J.:—Your purpose is that this proposed additional answer shall supplement the original answer?

*Mr. Heisel:*—Yes, sir.

BOYCE, J., delivering the opinion of the court:

This is a second application by Madeleine Du Pont Bancroft, one of the defendants, made within a week, to file an additional answer to plaintiff's petition for divorce, alleging misconduct of the plaintiff by way of recrimination. The first application was

refused by the court because of insufficiency of particularity. The present application is opposed for like reason.

We have had very little time to consider the questions raised because the commissioner appointed to take testimony in Germany has made all arrangements to sail in a few hours.

Before reaching our conclusion, the court inquires of you, Mr. Heisel, whether the new matters averred by your client have only come to her and your knowledge very recently, and since you sought to file the first additional answer, which was refused by the court.

*Mr. Heisel:*—They came to my knowledge for the first time on Friday of last week, the tenth instant.

BOYCE, J.:—Have the averments been made as fully and with all the particularity you are able to do at this time?

*Mr. Heisel:*—They have.

BOYCE, J.:—[11] The court is clear that good practice in matters of this character requires that before leave should be granted to file an additional answer it should be averred, being duly verified, that the new matters set forth have come to the knowledge of the party alleging them very recently and since the filing of the original answer, and that the delay in presenting the same to the court was not due to any want of diligence before or since the filing of the original answer or for the purpose of hindering or delaying the final hearing and determination of the case.

In view of the fact that the commissioner is about to sail for Germany, and the answers made by Mr. Heisel to our inquiries; and in the absence of any settled practice, the question whether we should entertain the present application, belated, as it is, is one which appeals to our discretion. Under all the circumstances we think it should be entertained. And after a hurried consideration of the sufficiency of the averments, other matters in court engaging our attention at the same time, we think the averments are sufficient.

Leave is granted to file the additional answer.

Before PENNEWILL, C. J., and CONRAD and WOOLLEY, J. J.

Upon the application of defendant's counsel, and without objection, the court made an order that fifteen days' notice be

given to counsel for defendant of the time of taking testimony by the plaintiff in Germany, or any foreign country, and that ten days' notice be given of the taking of such testimony in the United States.

Mr. Kurtz, the commissioner, made return, reporting that under the law of Germany he was not permitted to take the testimony of German witnesses, as that prerogative belonged exclusively to the German courts. The only testimony obtained by the commissioner was taken outside of his commission, in the form of an affidavit of one witness submitted by counsel for Madeleine Du Pont Bancroft, regarding which the said attorney had the witness voluntarily submit herself to cross-examination by the attorney for the plaintiff, in reference to the statements in said affidavit. That examination took place in the office of the United States Consul in Munich, Germany.

The commissioner's report showed that said affidavit was not filed in court, but was delivered to counsel for the defendants, which was subsequently used in the trial for the purpose of laying ground for contradiction of said witness when called to the stand to testify.

The case came on for trial at the November term, 1911, before PENNEWILL, C. J., and CONRAD and WOOLLEY, J. J. *Charles T. Terry*, of the New York bar, and *Paxson Deeter*, of the Philadelphia bar, were admitted *pro haec vice* as additional counsel for the plaintiff and the defendants, respectively.

Counsel for plaintiff offered in evidence, as tending to prove a confession of adultery, a letter written by the defendant, Madeleine Du Pont Bancroft to her sister-in-law. This was objected to by counsel for defendants, who contended that any admission of the defendants of adultery was inadmissible under the divorce statute of 1907.

PENNEWILL, C. J.:—We understand the offer of this letter is to support the charge of adultery.

*Mr. Terry:*—Precisely. That is all that it is offered for at this time.

PENNEWILL, C. J.:—[12] That is the question that is now before the court. The court think that *Section* 20 of *Chapter* 221,

*Volume* 24, *Laws of Delaware*, entitled, "An act relating to annulment of marriage and divorce," means, when reasonably construed, not that confessions shall be excluded in the trial of a case, but rather that the decree shall not be made unless there is other evidence establishing the cause. In other words, it defines the probative evidence of confessions. The manifest purpose of the act is that divorces should not be granted through collusion of the parties, and it was to prevent that, we take it, that the act was passed,—that particular section of the act.

We overrule the objection.

Counsel for defendants further contended that the statute meant that the confession could not be admitted until the case is established by other affirmative proof.

PENNEWILL, C. J.:—In reply to that suggestion, Mr. Deeter, the court feel that there has been introduced some evidence—we do not undertake to say what its value or effect may be—tending to establish the charge. We do not think it would be competent for us at any particular stage of the case to determine whether there has been sufficient evidence to establish it or not. So that we still think it is admissible.

In the course of the trial letters and other admissions of the wife and her alleged paramour, tending to show the paternity of the child, were admitted against objection, in proof of adultery of the wife, but subject to the further consideration of the court as to whether they may be considered in support of the issue of the illegitimacy of the infant defendant. The opinion of the court was as follows:

PENNEWILL, C. J.:—[13] We have considered the objections made by counsel for the defendants to the admissibility of the letters offered in evidence by the plaintiff, as well as the arguments of counsel for respective parties thereon, and have reached the conclusion that inasmuch as the evidence offered tends to prove the issue of adultery as well as the issue of the illegitimacy of the infant defendant, it cannot be excluded.

The court has already decided in this case that, while a decree of divorce cannot be granted upon the admissions or confes-

sions of the wife alone, such testimony is nevertheless admissible, and may be considered by the court, if the cause is shown by affirmative proof aside from such admissions or confessions. Such being the case, and it being admitted by counsel on both sides that the letters offered in evidence tend to prove the issue of adultery, we are clearly of the opinion that they cannot be excluded on the ground that they also tend to prove the issue of the child's illegitimacy, it being impossible to separate that which tends to prove one issue from that which tends to prove the other.

And it occurs to us now that there is another reason why the court may not refuse the admission of said letters, which is this:

[14] We understand this to be admitted by counsel for the defendants, and such is we think the law, that evidence may be admitted to show the fact of non-access on the part of the husband with the wife during the period of gestation. It has been testified by medical witnesses in behalf of the plaintiff that there could have been no such access as would make it possible for the plaintiff to be the father of the child whose legitimacy is in dispute. We also have the statement of counsel for the defendant that they propose by their testimony to controvert such evidence, and by medical testimony show that there was such access, taking to be true the undisputed date at which access began.

It is true, therefore, that the fact of access is in dispute and contested, and we are not now prepared to hold that the plaintiff may not establish his claim of non-access by testimony other than that of expert medical testimony.

We will admit in evidence in support of the issue of adultery the letters offered, and determine later whether they shall be considered by the court in proof of the issue of illegitimacy. Whether they are, or are not, legally admissible in support of the latter issue may be more apparent in the further development of the case; and in the meantime we will be able to examine with more care than is now possible the authorities which have been just cited, and possibly arrive at a more satisfactory determination of the important questions that have now been raised for the first time in this state, and apply the same to the decision of this case.

The objection is overruled.

There was much oral testimony introduced, showing physical facts and circumstances tending to prove both adultery on the part of the defendant and the illegitimacy of her child. The court reserved its decision until the March term, 1912, when the following opinion was announced.

PENNEWILL, C. J., delivering the opinion of the court:

The court are prepared to announce their decision in the above stated case.

After a very careful, thorough and serious examination and consideration of the arguments, the evidence and the law, we have reached the following conclusions, viz.:

1. That a decree *nisi* should be entered, divorcing the plaintiff and defendant wife from the bonds of matrimony heretofore existing between them. The Court are satisfied that the cause for divorce was shown by affirmative proof aside from any admissions on the part of the defendant.

2. That the exclusive custody and control of the child,— John Bancroft, should be awarded to the plaintiff.

3. That a decree should be entered establishing the illegitimacy of Max Hiebler, Jr., the infant defendant.

In reaching this conclusion we have not regarded the letters or other admissions of the defendant wife or Max Hiebler, which were received in evidence to be thereafter considered, or disregarded, by the court in arriving at their judgment.