ELEANOR BRENT POOLE, Appellant, v. HENRY M. POOLE, Appellee; WALTER W. WILSON et al., Executors, Appellees.

No. 43316.

MARCH 10, 1936.

REHEARING DENIED JULY 31, 1936.

Strock, Sloan & Dyer, for appellant.

Stipp, Perry, Bannister & Starzinger, for appellee.

KINTZINGER, J.—Plaintiff and defendant were married on June 27, 1923, and continued in that relation until 1928, when the defendant secured a divorce against his wife on the grounds of cruel and inhuman treatment. A property settlement was agreed upon September 5, 1928, when the following contract upon which this action is based was entered into:

"Whereas, the said Henry M. Poole and Eleanor Brent Poole, now husband and wife, contemplate and desire a divorce, severing and dissolving the bonds of matrimony now existing between them; and,

"Whereas, it is the mutual desire of the parties hereto that in the event a divorce is granted and obtained by either of them, a fair and equitable property adjustment be made between them, it is, therefore, mutually agreed as follows:

"1. Henry M. Poole agrees that in the event a decree of divorce is entered dissolving the bonds of matrimony now existing between himself and Eleanor Brent Poole, he will pay to the said Eleanor Brent Poole the sum of Three Thousand ($3,000.-00) Dollars cash, and Two Hundred Fifty ($250.00) Dollars per month, commencing October 1, 1928, and continuing for the balance of her natural life, or until the said Eleanor Brent Poole remarries. In the event of the death of Eleanor Brent Poole, all obligations of Henry M. Poole then existing under and by virtue of the terms of this contract shall cease and terminate. In the event the said Eleanor Brent Poole remarries, all obligations of Henry M. Poole here created shall cease and terminate.

"2. The said Henry M. Poole agrees to make the payments aforesaid to any bank or trust company which the said Eleanor Brent Poole may designate, due notice of such designation having first been given to the said Henry M. Poole.

"3. The said Henry M. Poole shall have the option and right to settle and satisfy his part of this contract in full at any time by the payment of the sum of Fifty Thousand ($50,000.00) Dollars to the said Eleanor Brent Poole, or to anyone whom she may designate. In the event the said Henry M. Poole elects to pay the sum of Fifty Thousand ($50,000.00) Dollars aforesaid, then the said Eleanor Brent Poole shall execute and deliver to him a release and receipt in full for all claims and demands of every kind and character which she has or may or might have, arising or growing out of the marriage relation now existing between them.

"4. In the event of the death of Henry M. Poole, his obligations incurred in this contract shall be binding upon the executors, administrators or heirs of his estate in the sum of Fifty Thousand ($50,000.00) Dollars.

"5. In consideration of the foregoing terms and conditions well and truly performed by the said Henry M. Poole, the said Eleanor Brent Poole waives and abandons any and all claims which she now has or may or might have against the said Henry M. Poole or his estate, arising and growing out of the marriage relation now existing between them."

This is the second action for unpaid installments under the foregoing contract. A judgment was rendered in favor of plaintiff in the first action and affirmed by this court. 219 Iowa 70, 257 N. W. 305. The present action is for unpaid installments from January 1, 1933, until March 1, 1935.

Defendant, for answer and cross-petition to plaintiff's petition, alleges in three divisions substantially as follows:

Division I is a general denial, except that it admits the marriage relation, admits the termination thereof by a divorce on or about September 10, 1928, admits the execution of the contract sued on, and admits refusing to make the payments thereon as alleged.

In division II, he admits the execution of the written contract referred to in plaintiff's petition; he also alleges that plaintiff reconveyed to him the legal title to the homestead property which defendant had given her at their marriage.

Defendant further alleges that prior to entering into the contract of settlement referred to, the plaintiff falsely and fraudulently stated and represented to the defendant, then her husband, that she at all times had been faithful to him as his wife and had not been guilty of adultery. That such representations were false and untrue, and were known to be so by the plaintiff, but not by the defendant. That they were made by the plaintiff for the purpose of inducing the defendant to execute the contract of settlement referred to. That the defendant believed and relied upon said representations, and as a result thereof executed said contract of settlement, and paid the plaintiff a large sum of money thereon, which he would not have done except for the false representations made to him.

Wherefore, the defendant asks that the written contract of settlement be canceled and rescinded; and for that purpose he offers to and alleges that he is ready, able, and willing to perform such conditions and do such things as may be equitable and just in the premises, and as may be required by the court as a condition to the cancellation and rescission of said contract, and for that purpose he asks that this case be transferred to equity.

In division III, he alleges "that if for any reason it should be found that he is not entitled to a cancellation and rescission of said written contract, and only in that event, then he has been injured and damaged on account of the fraud and wrong

of the plaintiff as set forth in division II in the amount which he has already paid to the plaintiff plus such additional amounts as he may be required by the court to pay in the future, in order to be released and discharged from said contract of settlement.''

Defendant then filed a motion to transfer the entire case to equity because of the matters alleged in his answer and cross-petition; and because in the event of a cancellation and rescission of the contract of settlement, plaintiff will claim certain rights and equities pertaining to an allowance for her support or a property settlement; and that a court of equity alone has jurisdiction to hear and determine such issues and render such other relief as may be just and equitable; and because a determination of the equitable issues can dispose of the entire case. This motion was sustained.

Thereafter, plaintiff filed a motion asking that defendant be required to file a more specific statement as to the acts of fraud and adultery alleged against plaintiff in division II of his answer, in that he be required to set out the specific acts of unfaithfulness and adultery relied upon by him, together with the times and places of the commission thereof, and the names of the persons with whom they were committed, on the ground that the allegations complained of are in the nature of conclusions, conceal the ultimate facts, and fail to apprise plaintiff of the alleged wrongful acts with which she is charged; that because such allegations cover the entire period of their married life, plaintiff is entirely at a loss to know what is relied upon by defendant, or what issues she is called upon to meet; and that the alleged acts of fraud be specifically alleged so as to enable plaintiff to prepare a defense thereto.

From a ruling adverse to plaintiff on all of these motions, plaintiff appeals.

I. Appellant contends that the court erred in transferring the entire case to equity.

(1) It is apparent from a reading of divisions I and III of defendant's answer that no equitable issues are raised therein. It was, therefore, clearly erroneous to transfer such issues to the equity branch of the court.

■■■ (2) Appellee contends, however, that the action of the court in transferring division II to the equity branch of the court was clearly correct because the allegations therein con-

tained raised an equitable issue and was properly transferred under the statute. It will be noted that this was an ordinary action commenced at law.

Code, section 10947 provides that: ''Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner hereinafter prescribed in cases of equitable proceedings; and if all the issues were such, though none were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings.''

It is the well-settled rule of law in this state, however, that where an action has been started in law, and where the courts of law afford relief from any alleged fraudulent acts, the jurisdiction of equity is concurrent, but that the courts will not remove the case to equity where the defense in a law action is full and adequate. ''This court has held that equity will not entertain an action to rescind a contract for mistake, unless it appears that an injury will result for which the aggrieved party will have no adequate remedy at law. Morse v. Beale, 68 Iowa 463, 27 N. W. 461. So, too, where a court of law has already obtained jurisdiction of a controversy involving an alleged fraud, equity will not interfere.'' Beeman v. Bankers' Life Co., 215 Iowa 1163, 247 N. W. 673, 674; Gray v. Coan, 36 Iowa 296; Biermann v. Guaranty Mut. Life Ins. Co., 142 Iowa 341, 120 N. W. 963; Dille v. Longwell, 169 Iowa 686, 148 N. W. 637; Randolph v. State Farm Mut. Auto Ins. Co., 216 Iowa 1414, 250 N. W. 639.

Appellee contends, however, that under the allegations of division II, he is authorized to have the issue of a cancellation and rescission of the contract tried in equity under section 10947 of the Code. It is true that the allegations of fraud alleged in division II might, if established, be sufficient to defeat plaintiff's action on the contract. In order to rescind, however, it is necessary to restore to plaintiff that which she has been deprived of. Defendant contends that because of his offer to restore, and because of his prayer for a cancellation and rescission, he cannot get full relief except through a court of equity.

It may be conceded that a contract cannot be rescinded without restoring to the other party to the contract the consideration received therefor, and that if one rescinds, he must

restore. In the former trial of this case, we held that the defendant cannot repudiate the obligations of his contract and retain its benefits. He is, therefore, now asking for a rescission of the contract, and offers to restore to plaintiff the consideration received therefor. These parties were married in 1923. At that time the defendant gave his wife the home property which he purchased and improved at a large expense. The title to this property was in her name at the time the negotiations for the contract of settlement in the divorce action were pending. If this contract should be rescinded, there would be no contract. In the absence of a contract, therefore, the home property and her potential right to alimony should be restored, and defendant contends that if a restoration is ordered, it would present a matter for the peculiar determination of a court of equity, and that it would be impossible to do so without such action. This, however, presupposes the existence of the facts alleged as constituting fraud. If defendant, however, is unable to establish fraud, there would be nothing for a court of equity to dispose of, and plaintiff contends that the matter of fraud is a question of fact that should be first determined in the law action commenced by her.

The equitable issue injected into this case is based wholly upon the fraudulent acts and conduct alleged to have been committed by the plaintiff. If the questions of fact constituting the alleged fraud are submitted in the law action, and the trial thereof results in a verdict favorable to plaintiff, such a result will necessarily dispose of any equitable issue based upon such fraud. In such event, there would be no occasion to try the equitable issue based thereon, and the entire case would be disposed of. If, on the other hand, the trial of the law issues should result in a favorable verdict for the defendant on the question of fraud, the equitable issue raised can then be tried in equity for the purpose of having the chancellor determine the amount of property and potential alimony that should be restored to plaintiff in accordance with the principles of equity and justice.

It is the rule of law in this state that where an action at law is commenced and fraud is alleged in defense thereto, the plaintiff cannot be deprived of his right to a trial by jury upon the issue of fraud. It is likewise the settled rule of law that if an additional ground of defense solely cognizable in equity is injected into the case, and if that issue is based upon fraud,

then the issue of fraud should be first tried out in the law action. Morris v. Merritt, 52 Iowa 496, 3 N. W. 504; Carey v. Gunnison, 65 Iowa 702, 22 N. W. 934; Gibson v. Seney, 138 Iowa 383, 116 N. W. 325; Lynch v. Schemmel, 176 Iowa 499, 155 N. W. 1019; Tinker v. Farmers' State Bank, 178 Iowa 972, 160 N. W. 349.

In Lynch v. Schemmel, 176 Iowa 499, loc. cit. 506, 155 N. W. 1019, 1021, this court, speaking through Justice Evans, quotes with approval the following language used by Justice Weaver in Biermann v. Guaranty Mut. L. Ins. Co., 142 Iowa 341, loc. cit. 343, 120 N. W. 963, 964:

"Of course, there is a certain field in which law and equity are said to have concurrent jurisdiction, and this jurisdiction includes a class of cases growing out of alleged accident, mistake, or fraud. But even in this common field courts of equity, though recognizing the existence of their jurisdiction, are generally reluctant to exercise it where the remedy at law appears to be adequate and complete. * * * Equity will not entertain an action to rescind a contract for mistake, unless it appears that an injury will result for which the aggrieved party will have no adequate remedy at law. Morse v. Beale, 68 Iowa 463, 27 N. W. 461. So, too, where a court of law has already obtained jurisdiction of a controversy involving an alleged fraud, equity will not interfere. * * * To sustain the position of the appellant herein would be to sanction a practice by which the plaintiff in every action upon an insurance policy, or, indeed, upon every simple matter of contract, may be deprived of his constitutional right to have his cause submitted to a jury. The attempt so to do is by no means without precedent in this state."

In Tinker v. Farmers' State Bank, 178 Iowa 972, loc. cit. 979, 160 N. W. 349, 351, this court said:

"Where an issue is tendered at law, determinable on the law side of the calendar, as to the law issues so tendered, the plaintiff is entitled to be heard before a jury. If there be injected into the case an issue triable at equity, whether exclusively cognizable in equity or not, that issue may be transferred to the equity side of the calendar without impinging upon the plaintiff's right to be heard on the law side upon the issues tendered there. * * * But where the action is rightly brought in the law forum, and equitable issues are injected into the law action, the court separates the equitable issues from the law

issues, and tries the law issues to a jury, and the equitable issues to the court. * * * The law issues, not being cognizable in equity, are tried as issues at law; that is, to a jury. So the equitable issues alone are to be tried as in equity, and pure issues at law are tried to a jury. * * * It asked, in addition to the relief prayed for in its counterclaim, relief which was cognizable in equity, *but to which it was not entitled, and could not be entitled unless it first prevailed in the issue tendered in its counterclaim.* [Italics ours.] * * * The counterclaim urged a state of facts which, at law, if proven, swallowed up all that the plaintiff claimed, and left him liable for a balance to the defendant. Whether he should lose the amount of his claim and have a judgment entered against him upon the counterclaim was a matter upon which he had a right to be heard before a jury. It presented an issue clearly of legal cognizance. This could be clearly separated from the claim which the defendant made for equitable relief, *and the equitable relief sought for depended upon the finding in the law action of the ultimate fact in controversy there* [italics ours], to wit, the liability of the plaintiff to the defendant upon the facts alleged in the counterclaim. * * * In the counterclaim the defendant sought to have this determined. * * * If determined in defendant's favor, then, if justified by the facts and the law, it might obtain the relief prayed for in its cross-petition, to wit, the specific performance of the agreement to give a trust deed to secure the balance so found. If equitable issues are presented by the defendant, it may, on motion, have these equitable issues tried in equity, but in no event has it a right to impinge upon or impair plaintiff's right to be heard on the issues tendered in law. * * * The authorities are uniform in holding, we think, that where a law issue is presented, and equitable issues are injected by the defendant either in answer or by way of cross-petition, the right of the plaintiff still remains to be heard on the law side as to the issues tendered of legal cognizance. Equitable issues, if any are interposed, may be tried and disposed of in equity without impinging upon plaintiff's right to be heard on the law side as to matters of legal cognizance involved on the law side.''

So in this action, where the alleged equitable defense is based solely and entirely upon the same facts alleged as constituting fraud, that issue, based upon such facts, should be tried in the

law action first. If such acts and conduct are not established in the law action, there would be nothing left for consideration of the equity branch of the court.

We are constrained to hold that the facts alleged in defendant's cross-petition as constituting fraud should be first submitted in the law action, and if, at the termination of that action, there is anything left for determination by a court of equity, the matter can then be transferred to and disposed of by that branch of the court.

It is, therefore, our conclusion that the lower court erred in sustaining defendant's motion to transfer the case to equity in its entirety. The case is, therefore, remanded for the purpose of trying the law issues presented first, and if those result in defendant's favor, then the equitable issues of rescission and restoration or other equitable issues not already determined should be tried in equity.

■■■ II. Appellant also contends that the court erred in overruling her motion to require the defendant to set out more specifically the acts of unfaithfulness and adultery alleged as constituting fraud, together with the times and places of the commission thereof, and the names of the persons with whom committed, because the allegations made are in the nature of a general conclusion, and conceal the facts upon which they are based.

■■■ It is the settled rule of law in this state that where a denial of a motion may involve the merits or materially affect the final decision of a case, the order of the court denying the motion is appealable. Northwestern Trading Co. v. W. L. S. Ins. Co., 180 Iowa 878, 163 N. W. 350; Dorman v. Credit Reference & Reporting Co., 213 Iowa 1016, 241 N. W. 436.

It is also the general rule in pleading fraud that the specific facts relied upon should be alleged. 49 Corpus Juris, 95; Ockendon v. Barnes, 43 Iowa 615; Mills v. Collins, 67 Iowa 164, 25 N. W. 109; Kerr v. Steman, 72 Iowa 241, 33 N. W. 654; Toovey v. Ayrhart, 136 Iowa 694, 114 N. W. 181; Lynch v. Kerslake, 186 Iowa 983, 173 N. W. 147; McKeehan v. City of Des Moines, 213 Iowa 1351, 242 N. W. 42.

In Kerr v. Steman, 72 Iowa 241, loc. cit. 242, 33 N. W. 654, 655, this court said:

"The doctrine is elementary that whoever sets up a fraud

must do more than allege fraud in general and abstract terms. He must set out the specific facts in which the fraud consists.''

In Dorman v. Credit Reference & Reporting Co., 213 Iowa 1016, loc. cit. 1026, 241 N. W. 436, 441, this court said:

''It is a matter of common knowledge to bench and bar that many pleaders seek to confuse their antagonists by a system of 'blind' pleading which, without giving any definite information, yet contains a general allegation, which appears sufficient. Unless the trial court sustains a motion for more specific statement to such a pleading, the defense must prepare to meet everything which could possibly be considered under the general allegation.''

The rule is well settled in this state that when a plaintiff in a divorce action alleges cruel and inhuman treatment, he will be required on motion to set out the facts constituting such treatment. Freerking v. Freerking, 19 Iowa 34; Closz v. Closz, 184 Iowa 739, 169 N. W. 183; Bowen v. Bowen, 219 Iowa 550, 258 N. W. 882.

The same rule applies in an allegation alleging adultery in general terms. It is the general rule that ''adultery must be specifically and positively alleged and with such certainty as to time, place, and person that defendant may know the charge he is called upon to meet.'' 19 Corpus Juris, 109; Freeman v. Freeman, 39 Minn. 370, 40 N. W. 167; Bancroft v. Bancroft, 4 Boyce (Del.) 9, 85 A. 561; Church v. Church, 3 Mass. 157; Burdick v. Burdick, 7 Wash. 533, 35 P. 415; Bush v. Bush, 103 App. Div. 588, 93 N. Y. S. 159; Miller v. Miller, 92 Va. 196, 23 S. E. 232; Randall v. Randall, 31 Mich. 194; Farr v. Farr, 34 Miss. 597, 69 Am. Dec. 406; Hahn v. Hahn, 136 Ill. App. 301, and a large number of cases collected in an annotation in 2 A. L. R. 1621.

In Freeman v. Freeman, 39 Minn. 370, 40 N. W. 167, the court said:

''There is no right more clear than that of a party to have the allegations in his adversary's pleading made with such reasonable and practicable definiteness and certainty as to enable him to meet them with counter allegations, and to prepare, so far as the truth of the case will permit, to meet them with proofs. In no class of cases has the sufficiency of pleadings, in this par-

1084

ticular, come in question more frequently than in actions for divorce on the ground of adultery.''

A litigant confronted with accusations of such a serious and general nature as those made in this case has no means of knowing the charges with which she may be confronted upon the trial, unless more specific acts are alleged. It is not sufficient to say that if certain accusations made at the trial are not true, they can be denied. She has a right to know more specifically the acts with which she is to be confronted at the trial as constituting the fraudulent conduct charged, so that, if innocent, she may be prepared to meet the accusations when made.

The defendant can suffer no particular injury by being required to set out more specifically the allegations of plaintiff's misconduct and adultery as requested. On the contrary, if the defendant be permitted to stand upon his general allegations, the appellant may suffer irreparable loss because of her inability to meet charges made at the trial on the spur of the moment.

We are constrained to hold that the court erred in failing to sustain plaintiff's motion for a more specific statement.

For the reasons hereinabove set out, the action of the lower court is hereby reversed and remanded, with instructions in harmony with this opinion.—Reversed and remanded.

DONEGAN, C. J., and ALBERT, MITCHELL, ANDERSON, and STIGER, JJ., concur.

PARSONS, J., took no part.