EUGENE L. GRANDON, appellee, v. G. L. ELLINGSON, appellant.

No. 52176.

SEPTEMBER 20, 1966.

Westfall, Laird & Burington, of Mason City, for appellant.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellee.

STUART, J.—This is an action for specific performance of the provisions in a contract for the sale of stock in a closely held corporation which provided for the retransfer of the stock and return of a $15,000 deposit, both held in escrow, in the event purchaser could not obtain a certain loan. Seller claimed waiver of or estoppel to assert the condition and counterclaimed for the contract price of the stock. Seller demanded a jury trial of all law issues raised by the answer and counterclaim which was denied. The trial court sitting in equity found for purchaser and seller has appealed. We affirm.

On or about September 28, 1963, plaintiff entered into a contract with defendant to purchase his stock in Ottumwa Lanes, Inc., a bowling alley, and Rebco, Inc. for $60,000.14. The sale was conditioned on plaintiff obtaining a loan of $185,000 from Iowa Securities Company, Waterloo, Iowa. In compliance with the terms of the contract, the stock certificate was endorsed to plaintiff and deposited in escrow with defendant's attorneys. Plaintiff deposited $15,000 in escrow with them.

The contract provided: "* * * in the event the above described loan is not approved, the stock and its title shall be returned to Mr. Ellingson and with the further reservation that the $15,000 held in trust by Westfall, Laird & Burington until the approval of the loan, and in the event such loan is not secured, in addition to Mr. Ellingson's receiving this stock, Dr. Grandon shall receive a return of his $15,000."

The same date, September 28, 1963, an election by a small business corporation to be taxed as a partnership under subchapter S, Internal Revenue Code, was prepared for Ottumwa Lanes, Inc. Plaintiff-purchaser was listed as sole stockholder and he signed the consent to election under subchapter S. These forms were received by the Director of Internal Revenue on October 1, 1963. They were not timely filed and were of no validity.

Iowa Securities did not approve the loan. Defendant refused to authorize his attorneys to return the $15,000 deposit. Plaintiff brought this action for its return and asked for the opportunity "to endorse, execute, assign, transfer and deliver the certificates for the shares of stock described in the contract, or any other

instrument required to transfer and assign such shares back to defendant."

Defendant in answer claimed plaintiff by executing and filing the election under subchapter S of the Internal Revenue Code waived the condition and was estopped from denying his obligation to purchase the stock. Defendant also filed a counterclaim under which he tendered the stock and sought to recover the full purchase price.

On the same date the answer and counterclaim were filed, defendant filed a demand for a jury trial of all issues triable at law under answer and counterclaim. Without objection, the court treated this demand as a request for separate trial of law issues and overruled the motion.

I. Defendant claims it was error for the trial court to refuse a separate trial at law of the issues raised in his answer and counterclaim. We do not agree.

It is conceded the allegations of plaintiff's petition called for equitable jurisdiction. "* * * once equity has obtained jurisdiction of a controversy it will determine all questions material or necessary to accomplish full and complete justice between the parties, even though in doing so it may be required to pass upon some matters ordinarily cognizable at law." Simpson v. Bostwick, 248 Iowa 238, 244, 80 N.W.2d 339, 343.

"Where an action is properly brought in equity the defendant has no right to a trial by jury of law issues presented in the answer, and the court will retain jurisdiction and determine the legal issues presented." Beh v. Tilk, 222 Iowa 729, 731, 269 N.W. 751. (Citing cases)

Defendant claims he was entitled to a jury trial on the affirmative defenses of waiver and estoppel. Law and equity have concurrent jurisdiction of these defenses. They may be urged in either forum. They both rest on equitable principles which courts of law recognize. State ex rel. School Township v. Kinkade, 192 Iowa 1362, 186 N.W. 662; 31 C. J. S. 400, Estoppel, section 64; 31 C. J. S. 378, Estoppel, section 61(a). Equity had jurisdiction of the controversy and the raising of defenses not solely cognizable at law did not give defendant the right to a law trial on these issues.

Defendant also claims he pleaded conversion which is an action at law. Conversion was alleged here only as a basis for estoppel or waiver, not as a separate cause of action. Even if it were a legal issue here, it would not be triable separately under the general rules set out above. Sections 611.4 and 611.10, Code of Iowa, preserve the right to have purely equitable issues tried in equity even if they arise in ordinary proceedings. There is no statutory counterpart providing for a law trial of purely law issues arising in an equity matter. Equity may determine all matters both legal and equitable when the controversy is properly before it. 30 C. J. S. 919, Equity, section 67.

It is true defendant's counterclaim, if brought as an original action, was triable at law. Gingerich v. Protein Blenders, Inc., 250 Iowa 654, 95 N.W.2d 522, 524, 525. However it raised the same issue involved in the petition in equity—whether the obtaining of the specified loan was a condition precedent to the completion of the sale of stock. The proper forums differ—not because the issues differ—but because law provides an adequate remedy to one party but not the other. The counterclaim was at law because a money judgment for the purchase price provided an adequate remedy for the seller. It is assumed by the parties that the purchaser under these facts could only receive adequate relief through specific performance. The one primary issue can and must be resolved in the equitable action. Nothing remains to be disposed of at law. Equity could have awarded the money judgment on the counterclaim had defendant prevailed.

Mutuality of remedy is not necessary in order to invoke equitable jurisdiction for specific performance. Gingerich v. Protein Blenders, Inc., supra. Defendant is not entitled to have an issue tried at law because it is the proper forum for his remedy, when the plaintiff's remedy is in equity.

We will refer briefly to authorities cited by defendant. Gingerich v. Protein Blenders, Inc., 250 Iowa 654, 95 N.W.2d 522, holds only that a vendor of stock has an adequate remedy at law and an equitable action for specific performance is not available to him. In Folkner v. Collins, 249 Iowa 1141, 91 N.W.2d 545, 546, and Christensen v. Board of Supervisors of Woodbury County, 251 Iowa 1259, 1265, 105 N.W.2d 102, 108,

there were clearly severable issues or cause of action on which the trial court could in its discretion order separate trials under rule 186, Rules of Civil Procedure. In Poole v. Poole, 221 Iowa 1073, 1078, 265 N.W. 653, the action was properly brought in law and the issue of fraud raised in answer was cognizable in both law and equity and there was therefore an adequate remedy at law. Other issues solely cognizable in equity were to be tried separately, if necessary, after determination of the fraud issue in the ordinary proceedings. The language relied on in In re Nathan, 98 F. Supp. 686, 690, is dictum, but in any event the matters there were severable. A finding in favor of the claimant on the note would not bar a finding in favor of the trustee in bankruptcy on the question of preference.

We hold the trial court acted properly in trying all issues in one equitable action.

II. Defendant claims plaintiff, by exercising dominion and control over the shares of stock, waived the condition precedent and is estopped from asserting the failure of the condition as a reason for not completing the purchase of the stock. The act which he claims constituted such dominion and control was the election by Ottumwa Lanes, Inc. to be taxed under subchapter S in which plaintiff signed the consent as sole stockholder. Further factual background will aid in explaining defendant's position.

Stock in Ottumwa Lanes, Inc. was owned as follows: Defendant, 24 shares; C. A. Rugger, 12 shares; and a third person, 12 shares. These three parties also had the same proportionate ownership in Rebco, Inc. which owned the building in which the bowling alley was located. The contract here involved defendant's stock only. There had been discussion concerning the purchase of the remaining 50 percent interest by plaintiff but there was no contract.

Ottumwa Lanes, Inc. had shown an operating loss for income tax purposes. Under subchapter S a qualifying corporation elects to be taxed as a partnership and the income or loss is reportable by the stockholders on their individual returns. It was contemplated that plaintiff could take advantage of the loss on his personal return while acquiring an investment with sufficient cash flow to finance itself.

The Internal Revenue Code required the election to be made during the first month of the corporation's taxable year, which in this instance began September 1. Plaintiff signed the offer September 28, 1963. On the same date the forms necessary for the subchapter S election were executed by "C. A. Rugger, secretary-treasurer" and included plaintiff's consent in which it was stated he was the owner of "48" shares. The contract was accepted and the executed copy mailed to plaintiff's attorney, October 1, 1963. The election was also received by the Internal Revenue Service October 1, 1963.

The purchase was never completed because the loan was not approved. The election was not timely filed. The corporation never filed returns under the election and plaintiff never claimed any loss from either corporation on his personal income tax return.

We are not here concerned with the difficulties which might have developed between plaintiff and the federal government if he had completed the purchase and attempted to take advantage of this election on his income tax return. We must determine whether this action constituted a waiver or an estoppel against plaintiff. We do not think it does.

■ The burden is on defendant to prove the waiver. Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 601, 94 N.W.2d 750, 752, 82 A. L. R.2d 465. Waiver is the voluntary relinquishment of a known right. Perkins v. City National Bank of Clinton, 253 Iowa 922, 935, 114 N.W.2d 45, 52, 53; Williams v. Stroh Plumbing & Electric, Inc., supra, 602. It must be made intentionally and with knowledge of the circumstances. Axtell v. Harbert, 256 Iowa 867, 874, 129 N.W.2d 637, 641; Lamb v. City of Boone, 237 Iowa 273, 278, 21 N.W.2d 462, 464, 162 A. L. R. 1465; Kaltoft v. Nielsen, 252 Iowa 249, 257, 106 N.W.2d 597, 602; Williams v. Stroh Plumbing & Electric, Inc., supra, 602 of 250 Iowa.

We find no evidence of any intention to waive the condition of loan approval. The act of electing to come under subchapter S does not amount to a waiver. Under the terms of the contract, title was to be transferred to plaintiff upon its execution. The certificates had been endorsed to plaintiff and deposited in

escrow. Insofar as the ownership of the stock was concerned it had passed to plaintiff, subject to being retransferred in the event the loan was not approved. Whether this transfer was sufficient to meet the ownership requirements of subchapter S is not for us to decide. These provisions for the transfer and possible retransfer of stock must have been for some purpose. In view of the importance of the tax loss in these negotiations, it is logical to assume title was transferred so plaintiff could make the election within the deadline. There is nothing in the record which would indicate plaintiff believed he was waiving the condition precedent by this action. Time was so short for the filing of the election it would, as a practical matter, have been impossible to get a loan approved in time and the condition precedent would have been meaningless if the election amounted to a waiver. Under defendant's theory, the condition would have been waived on the same date it was set out in the offer. We find no evidence of an intentional waiver of a known right.

The elements of estoppel are (1) false representation or concealment of material facts, (2) lack of knowledge of the true facts on the part of the person to whom the misrepresentation is made, (3) intent of the party making the representation that the party to whom it is made shall rely thereon, (4) reliance on such fraudulent statements or concealment by the party to whom made resulting in his prejudice. Halvorson v. City of Decorah, 258 Iowa 314, 320, 138 N.W.2d 856, 861; Axtell v. Harbert, 256 Iowa 867, 872, 129 N.W.2d 637, 639, 640; Stookesberry v. Burgher, 220 Iowa 916, 921, 262 N.W. 820.

We need not examine the evidence to support the first three elements because defendant's own testimony clearly shows he did not rely on any of plaintiff's representations to his prejudice. In a detailed cross-examination defendant stated neither plaintiff nor his attorney had made any representations of fact or oral understandings which he acted or relied on and that no one had told him Doctor Grandon would purchase the stock even though the loan was refused. Concerning the election under subchapter S, he testified:

"Q. Are you aware, Mr. Ellingson that Ottumwa Lanes Inc. on or about September 28th, 1963, filed an election by small

business corporation to be taxed under the provisions of Sub-chapter S United States internal revenue code? A. No I don't.

"Q. You are not aware of that fact? A. No, I am not.

"Q. So therefore it is fair to say that at no time have you ever relied upon that election in forming your own decisions as to your course of action, is that right? A. No that was talked about at one meeting and it was not explained to me at all.

"Q. But you never relied on the fact that that instrument was executed and filed with the government? A. No.

"Q. You never relied on that fact? A. No I did not.

"Q. And the fact that that instrument was executed and filed has not influenced you in your business judgment one way or the other in any respect, has it? A. No, it never has because I didn't know nothing about it."

Defendant failed to prove the necessary elements for an estoppel.

III. Defendant contends plaintiff is not entitled to equitable relief here under the maxim "he who comes into equity must come with clean hands". The conduct which he claims bars plaintiff from equitable relief was the filing of the "election by a small business corporation" and certain contradictions between the answers in his deposition and written interrogatories.

Assuming for the purpose of this discussion that plaintiff was guilty of iniquitous conduct in filing the election claiming to own all the stock of the corporation when at most he had title to only 50 percent of it, these facts do not invoke the maxim here. This act was collateral to and not a part of the contract of which plaintiff seeks specific performance. It comes into the case only because defendant attempted to use it as a basis for waiver or estoppel. It did not affect defendant or influence his conduct in any way.

In 19 Am. Jur. 327, 328, Equity, section 473 says:

"Relation of wrongful conduct to matter in suit. The applicability of the maxim, 'he who comes into equity must come with clean hands,' depends upon the connection between the complainant's iniquitous acts and the defendant's conduct which the complainant relies upon as establishing his cause of action.

Relief is not to be denied because of general iniquitous conduct on the part of the complainant or because of the latter's wrongdoing in the course of a transaction between him and a third person. In other words, the maxim may not be invoked by reason of acts which are not shown to have been connected with the transaction giving rise to the suit or otherwise to have been related to the defendant or anything in which he was interested. Where inequitable conduct is shown, the resulting disqualification extends only to the enforcement of equities which are founded upon the matter or transaction which the conduct involved. The question to be resolved is whether the complainant's wrongful conduct is connected with, or related to, the dispute between the complainant and the defendant, and not whether the complainant has been guilty of wrongdoing from which he has benefited.

"The courts apply the maxim, 'not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice.' "

"If the alleged wrongful conduct of the complainant appears not to have injured, damaged or prejudiced the defendant, the maxim may not be successfully invoked." 19 Am. Jur. 328, Equity, section 474.

"The wrong which may be invoked to defeat the suit must have an 'immediate and necessary relation' to the equity which the complainant seeks to enforce against the defendant or it must 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.' If the wrong is shown to be merely collateral to the complainant's cause of action, it does not constitute matter of defense." 19 Am. Jur. 328, Equity, section 475.

We recently reviewed authorities to this effect in Butler v. Butler, 253 Iowa 1084, 1124, 1129, 114 N.W.2d 595, 618–620. In Benson v. Sawyer, 216 Iowa 841, 849, 249 N.W. 424, we said:

"There was no relationship between the acquisition of plaintiffs' rights in the Iowa properties and the Kansas conveyances. It is not necessary to determine whether the transactions in relation to the Kansas land were in fact tainted with fraud, for the reason that fraud in connection with such trans-

fers would not defeat plaintiffs' right to recover in this case. In 21 C. J. 187, it is said:

" 'A party is not barred from relief because of misconduct not connected with the matter in controversy; and this is true, although the misconduct may be directly connected with the subject matter of the suit.' * * *

" 'The equitable rule that a plaintiff asking relief must come into equity with clean hands has reference only to the relations between the parties, and arising out of the transaction.' "

These principles are also supported by Atkin v. Westfall, 246 Iowa 822, 830, 69 N.W.2d 523, 528; Sisson v. Janssen, 244 Iowa 123, 130, 56 N.W.2d 30, 34; Carr v. Craig, 138 Iowa 526, 532, 116 N.W. 720.

In his discovery deposition taken on May 20, 1964, plaintiff stated positively that he had signed no instruments relating to subchapter S. In answers to interrogatories filed September 18, 1964, he stated he did not recall signing any such instrument but that such "purported election" was received by Director of Internal Revenue on October 1, 1963. At the trial he identified the signature thereon as his. In the election under subchapter S he stated he owned all the stock and testified at trial there had been some talk about purchase of the other 50 percent of the stock but that there was never any agreement.

There are inconsistencies in his testimony, but this is not enough to bar a party from the equity courts. If this were true we would be relieved of a considerable portion of our work load. We do not believe these inconsistencies disclose any intent to deceive the court, but can occur normally in a business transaction when an investor is letting his representative handle the details. No cases are cited which support defendant's theory that inconsistent testimony deprives a party of the right to equitable jurisdiction.

We hold the doctrine of "clean hands" does not apply to the facts here and is no bar to plaintiff's cause of action.

IV. Defendant claims plaintiff's attempted rescission of the contract was not timely. We need not decide this question, because, plaintiff did not seek to rescind the contract but was asking for specific performance of the terms of the contract

itself. The contract provided "the stock and its title shall be returned to Mr. Ellingson, and * * * Dr. Grandon shall receive a return of his $15,000" if the loan was not approved. All plaintiff seeks is compliance with this provision.

Smith v. Russell, 223 Iowa 123, 130, 131, 272 N.W. 121, seems to be directly in point. There plaintiff brought an action in replevin to obtain possession of property sold on installment contract for failure to make payments. We said:

"We have here a contract which by its terms is specific. In retaking the property the appellant was but exercising his rights under the contract, and upon the exercise of which, by the very terms of the contract, the purchase money already paid was to be considered as rent for the use of the property. The parties had a right to so contract. Upon the exercise of this right in a legal manner, the legal effect is to terminate the contract. It did not amount to a rescission of the contract, but amounted to the exercise of rights under the contract."

For the reasons hereinabove stated this trial court is affirmed.—Affirmed.

All JUSTICES concur.