**Gloria R. BENEVENTI, Appellant,**

v.

**Robert L. BENEVENTI, Appellee.**

**No. 54236.**

Supreme Court of Iowa.

March 11, 1971.

H. M. Coggeshall, Des Moines, for appellant.

Swift, Brown, Rogers, Winick & Randall, Des Moines, for appellee.

LARSON, Justice.

Pursuant to an action for child support brought under the Iowa Uniform Support of Dependents Law, Chapter 252A of the 1966 Code, the District Court of Polk County, Iowa, inter alia, ordered the respondent father to pay through the clerk of court as child support for each of three minor children the sum of $100 per month commencing on the 1st day of June 1969 and continuing thereafter until each child is 18 years of age, marries, or becomes self-supporting, whichever event shall first occur. Respondent expressed no dissatisfaction with that provision.

However, the district court also ordered that the respondent have the right to have the children visit him outside the State of Georgia from June 15 to August 15 of each year commencing in 1969 and at other specified times. It further ordered that petitioner cooperate with respondent in arranging transportation of the children from Georgia, the state of petitioner's residence, to a place designated by respondent, and share in the transportation costs.

The court further entered judgment against petitioner and in favor of respondent for $200 for failure to answer certain interrogatories, taxed the costs against petitioner, and granted respondent's attorney fees in the sum of $300.

Petitioner appeals contending that, with the exception of the order establishing the amount of support to be furnished petitioner for the children, the Iowa district court did not have jurisdiction to impose these conditions or render these judgments against petitioner and that its orders to that extent are void. We must agree.

From the record we learn that the appellee, Robert L. Beneventi, and the appellant, Gloria R. Beneventi, were married in the State of Georgia on January 31, 1956. Three children were born of this marriage,

Bradley Thomas on July 30, 1957, John Joseph on April 27, 1961, and Leigh Irene on March 13, 1963.

Prior to March 13, 1968, the appellee, the appellant, and their three children resided in Des Moines, Iowa. The appellee was an attorney employed by the Dial Finance Company.

Robert testified their marriage had not been a happy one and that he and Gloria had discussed separation or divorce. When he returned from work on March 13, 1968, he discovered that she and the three children had departed from their home in Des Moines. He learned later that they had taken up residence in Muscogee County, Georgia, that she had filed a civil action in that county and state on March 15, 1968, which resulted in a default decree on June 20, 1968, awarding her the permanent custody of the minor children without visitation rights in him and awarding to her the sole ownership of all their property located in Georgia. Notice to Robert of the Georgia court action was served by publication and by personal service on him in the State of Iowa.

It also appears on March 19, 1968, Robert filed a petition for separate maintenance in Polk County District Court wherein he prayed for custody of the children and the use of the home in Des Moines, Iowa. Gloria was served notice by publication. Pursuant to Robert's amendment to his petition praying for a divorce, a default decree was entered September 16, 1968, granting him a divorce, the homestead, and all furnishings therein, and providing that he was under no obligation to pay child support.

On September 5, 1968, petitioner commenced the action for support now before us. She filed a verified petition in the Muscogee County court with an attached pauper's affidavit, and the Georgia court certified the application to the Polk County District Court. An order was then entered by the Iowa court setting the matter for hearing October 25 and providing for the

subpoena of defendant Robert. On October 17 defendant filed a verified answer and a counterclaim. He also filed 21 interrogatories to be propounded to Gloria. She declined to answer all but four on the basis of irrelevancy. The court thereafter ordered her to answer them under penalty provided by the Rules of Civil Procedure in Iowa and set the case for trial on its merits on March 28, 1969. On May 12, 1969, the district court made certain findings as to parental duty to support, custody, and rights of visitation, and ability to contribute, and ordered appellee to pay into court the amount heretofore set out. The order also provided visitation privileges for appellee and certain custodial rights as a condition of the award. Gloria appealed to this court on June 9, 1969, and thereafter by ex parte order the district court found that she had failed to permit Robert to have custody of the children pursuant to its order and terminated Robert's obligation to pay child support as of June 15, 1969.

As her first proposition relied upon for reversal of the conditional provisions of the order for support under the Uniform Support of Dependents Law, appellant maintains the court lacked jurisdiction to consider or decide rights of custody and visitation, possession of property, attorney fees, and income tax deductions, and contends the appellant mother should have been granted an unconditional order for support of the children without any purported judgment in personam against her.

In her second proposition she contends the district court's order of June 26, 1969, following her appeal to the Supreme Court on June 9, 1969, is void for a lack of jurisdiction in the district court.

The primary if not the sole question presented by this appeal is the extent of the district court's jurisdiction in actions brought for child support under the Uniform Support of Dependents Law, being chapter 252A of the Code of Iowa 1966.

I. Chapter 252A is unquestionably a special procedure statute. It was enacted in substantially the same form in practically every state and territory of the United States. State ex rel. Schwartz v. Buder, 315 S.W.2d 867 (Mo.App.1958); Thompson v. Thompson, 93 So.2d 90 (Fla.1957). Also see Brockelbank's treatise, Interstate Enforcement of Family Support. Its chief purpose was to supplant inadequate laws for the enforcement of support by providing "a simplified two-state procedure by which the obligor's duty to support an obligee residing in another state may be enforced expeditiously and with a minimum of expense to the obligee (or to the State, if the obligee is indigent). It contemplates that the court of the initiating state will refer the petition to the court of the responding state having jurisdiction of the obligor or his property. * * *. It takes cognizance of the fact that the duty of support may arise out of a divorce or separate maintenance decree entered by another court * * *." Thompson v. Thompson, supra, 93 So.2d 90, 93.

II. Section 252A.9 provides: "This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it."

Section 252A.7 provides: "It shall be the duty of all petitioner's representatives of this state to appear in this state on behalf of and represent the petitioner in every proceeding pursuant to this chapter, at the time the petition is filed and at all stages of the proceeding thereafter, and to obtain and present such evidence or proof as may be required by the court in the initiating state or the responding state."

Section 252A.6(5) provides: "It shall not be necessary for the petitioner or the petitioner's witnesses to appear personally at such hearing, but it shall be the duty of the petitioner's representative of the responding state to appear on behalf of and represent the petitioner at all stages of the proceeding."

Section 252A.3(7) provides: "Notwithstanding the fact that the respondent has obtained in any state or country a final decree of divorce or separation from his wife or a decree dissolving his marriage, the respondent shall be deemed legally liable for the support of any dependent child of such marriage."

Section 252A.4(2) provides: "The court of the responding state shall have the power to order the respondent to pay sums sufficient to provide necessary food, shelter, clothing, care, medical or hospital expenses, * * *."

III. The Iowa provisions being almost identical to those enacted in other states, we may look to pronouncements by the courts in those states for a general interpretation of this special procedure. We find they have generally restricted the jurisdiction of the hearing to a granting or denying of support and do not endeavor to exercise personal jurisdiction of the parent seeking relief nor recognize and grant counterclaims against that parent. Blois v. Blois, 138 So.2d 373 (Fla.App.1962); Thompson v. Thompson, supra, 93 So.2d 90 (Fla.1957); State ex rel. Schwartz v. Buder, supra, 315 S.W.2d 867 (Mo.App.1958); Davidson v. Davidson, 66 Wash.2d 780, 405 P.2d 261 (1965); Clarke v. Blackburn, 151 So.2d 325 (Fla.App.1963); Prager v. Smith, 195 A.2d 257 (D.C.App.1963); Wilson v. Wilson, 66 Nev. 405, 212 P.2d 1066 (1949); State of Illinois ex rel. Shannon v. Sterling, 248 Minn. 266, 80 N.W.2d 13 (1956).

In Thompson v. Thompson, supra, a husband and wife were divorced in Florida and the wife later filed in Connecticut under the Uniform Act. That court referred its order for enforcement to Florida where the husband lived. Support was awarded by the Florida court, which stated at page 93 of 93 So.2d: "It [this law] is intended to provide remedies to the obligee 'in addition to and not in substitution for any other remedies' * * *."

In Moore v. Moore, 252 Iowa 404, 107 N.W.2d 97, we ourselves considered the extent of the jurisdiction conferred upon the respondent state. There a wife in Alabama brought a support action against her husband in Iowa and was awarded $65 per month. Respondent argued that, since an Illinois court had granted him a divorce and required a support payment of only $50 per month, the responding Iowa court could do no more than collect that amount under comity and full faith. However, this court held that it could make its own determination as to the amount of the support payments needed, after a hearing in Iowa, because the statute provided for such a remedy in addition to others available when jurisdiction was secured.

In Wilson v. Wilson, supra, a husband obtained a divorce from his wife when they were both domiciled in Nevada. A child support issue arose but not under the Uniform Act since it was not in existence until several years later. The court in that circumstance found that conditioning of support payments on recognition of visitation rights was not an abuse of the trial court's discretion. Jurisdiction was not an issue, for it had been retained in the original suit. Also see State of Illinois ex rel. Shannon v. Sterling, supra.

IV. It is implicit from a review of the above-mentioned provisions of our Uniform Support of Dependents Law, and the decision of other courts under like statutes, that the only real problem in such a proceeding is the extent of the support required of the respondent. The issue of dissolving the bonds of matrimony certainly is not before the court and, while some of the evidence relevant to that issue might bear on the amount of support necessary for the children, it is nevertheless extraneous to the real issue of respondent's duty to furnish support for them. We do not believe the legislature, in adopting the Uniform Support Law, ever intended to include under chapter 252A the review or determination of the issues involved in a suit for divorce.

As appellant contends in this appeal, the whole purpose of the law is to require a

respondent to support his dependents to the extent of his ability to so do, and the legislature surely did not intend that the county attorney, a prosecuting official who is designated to represent the dependents in the proceeding, should be transformed into an attorney representing a private client in a divorce proceeding.

■ However, like the Florida court in Blois v. Blois, supra, 138 So.2d 373, we do not find it necessary to rely solely upon the general purpose of this law or its intent clearly expressed in the various provisions thereof, for we believe this special statute does not authorize the filing of another action requiring personal jurisdiction such as a counterclaim for relief ordinarily entertained by divorce or like proceedings.

■ Although in Blois v. Blois, supra, the court did note a section in the Florida law which specifically provides that participation in any proceedings under the chapter shall not confer upon the court jurisdiction of any of the parties thereto in any other proceedings, it did not rely solely upon that section for its conclusions. Although it also appears some other states include such a provision in their Uniform Act, we are not convinced such a section is necessary to a decision that the Act grants no jurisdiction of the parties for any other purpose than to determine liability for support. Brockelbank, in his Interstate Enforcement of Family Support, expresses a like view and concludes such a section is unnecessary in the Uniform Act.

The St. Louis Court of Appeals in State ex rel. Schwartz v. Buder, supra, 315 S.W.2d 867, 870, in considering whether a counterclaim was properly entertained in such proceedings, said:

"As the cause is initiated in a foreign jurisdiction and the prosecuting attorney is obliged to prosecute the claim for the plaintiff and a rule of evidence is changed, there is no way in which an orderly trial of the cross bill for a divorce could be heard without detriment to the purpose of the Act. It is evidence that to allow a cross bill for divorce would compel a mother, claiming support for her children, to defend such divorce action in a place far removed from her domicile. The plain purpose of the Act is only to enforce the payment of support which the defendant is legally obliged to pay and it has no relation to changing the marital status of the parties."

■ Since one of the principal purposes of this support act was to supplant inadequate laws for the enforcement of the duty to support upon a deserting husband who had abandoned his family and was beyond the process of the state where his family resided (Ivey v. Ayers, Mo., 301 S.W.2d 790), it would not appear important whether the father had departed from the family home or the wife had moved from that jurisdiction to another, especially if she had in good faith established the new residence. In the case at bar, by a court proceeding petitioner had established the residence of herself and children in Georgia, and we cannot gainsay that determination in this proceeding.

■ Appellee cites and relies greatly on the case of Daly v. Daly, 39 N.J.Super. 117, 120 A.2d 510, 516 (1956). In that case a wife, without her husband's consent, fled their home in New Jersey and went to Kentucky. She instituted an action in New Jersey under the Uniform Act. In passing on its jurisdiction under the Uniform Act the New Jersey court stated: "Where the wife has a bona fide reason for removing the children from New Jersey to the foreign state, which reason is consistent with the children's welfare, and the children are in need of support from the father, the wife may use the Reciprocal Act to obtain relief against their father here for their support. * * * And, * * * this court has authority, where the welfare of the children so require, * * * to incorporate in the support order adequate provision for visitation rights by the father and to use the sanction of

temporary deprivation or reduction of such support as a means of making such visitation rights effective." It may be that this determination was based upon the failure to show the wife and children had not established a new residence in the other state, but if it holds the Act itself extends jurisdiction beyond the right to determine the necessary support for the dependents, it represents a very minority view and we cannot subscribe to it. In our view it would destroy the object and purpose of this Uniform Act, and we conclude the trial court erred in attaching conditions pertaining to visitations, costs of transportation of the children from the home in Georgia, attorneys fees, and costs.

Our holding is not to be understood as unsympathetic to the rights and importance of visitation between parent and child. This court and most state courts believe it desirable that children have the opportunity to visit with and know both of their parents and, except for very cogent reasons, that right should not be denied a parent. However, it seems there is an avenue open to appellee which would provide such a right if presented to the court that has jurisdiction to pass on this issue. We are not convinced appellee could not receive fair treatment before the Georgia courts in an application for such rights and privileges. His reluctance to submit to the jurisdiction of that state's courts in an appeal or application for modification of a previous order is not such a compelling factor as will justify endangering a Uniform Act by extending jurisdiction beyond that intended.

V. Section 252A.4 of the Code provides: "* * * 3. The courts of both the initiating state and the responding state shall have the power to order testimony to be taken in either or both of such states by deposition or written interrogatories, and to limit the nature of and the extent to which the right so to take testimony shall be exercised, provided that the respondent is given a full and fair opportunity to answer the allegations of the petitioner."

Section 252A.6, relating to trial procedure, provides: "* * * 9. Upon the resumption of such hearing, the respondent shall have the right to examine or cross-examine the petitioner and the petitioner's witnesses by means of depositions or written interrogatories, and the petitioner shall have the right to examine or cross-examine the respondent and the respondent's witnesses by means of depositions or written interrogatories."

On October 17, 1968, the respondent submitted 21 interrogatories and asked that plaintiff be required to answer them. She answered four and declined to answer the others on the general ground that the answers were not relevant to the support issue here. The trial court did not agree and on February 28, 1969, entered an order requiring her to answer the interrogatories propounded by respondent except those already answered. When she failed to comply with that order, the trial court proceeded with the trial and entered a judgment for $200 against plaintiff and allowed that sum as a credit on child support payments. In this regard we believe the trial court was in error.

█ It is well established in this jurisdiction that among the important factors to be considered in awarding child support are the needs of the children, the age, health and future prospects of the parents, their earning capacities and resources, and any other facts which will assist the court in reaching a just and equitable decision. Cole v. Cole, 259 Iowa 58, 60, 143 N.W.2d 350, 351, and citations; Lessenger v. Lessenger, 258 Iowa 170, 172, 138 N.W.2d 58, 59, and citations. Testimony which bears upon these factors is not only relevant but is extremely important. Without it the court could fail to reach a just and right decision. Without it we cannot adequately review that decision.

Although some of the submitted interrogatories seem to have little or no relevance to the issue of child support, several are of material importance in fixing the

right sum the father must pay for the support of these children.

From the record we learned that Interrogatory No. 7 requested plaintiff to itemize in detail and give a list of her financial assets, and No. 8 asked for a true copy of her 1967 federal income tax return or an itemized statement of the contents thereof. No. 9 asked her to itemize her income for the calendar year 1968 and state its source, and No. 10 asked if she was presently giving piano lessons or teaching music and, if so, what were her earnings therefrom. Interrogatory No. 20 asked whether certain debentures she owned · were disposed of, and for what price, and No. 21 asked if she had disposed of any of her assets up until the present time and, if so, for what price.

In answering No. 20 the plaintiff stated she did not and does not now own any Sheraton Hotel debentures, and she refused to answer the other questions referred to above.

True, there was some evidence as to these matters before the court, but there was no opportunity to cross-examine or determine the actual status of the parties by the court and, until that opportunity is fully afforded each, judgment should have been withheld. Although it would appear the amount granted as child support by the father falls within his ability to pay, unless the plaintiff fully discloses her financial condition the correctness of that judgment cannot be determined. Under these circumstances, then, the matter must be remanded for further proceedings before a final decision is rendered as to what is the right and just obligation of respondent. Plaintiff is to be given a reasonable time to answer the interrogatories as ordered by the trial court. When such answers are filed the court shall take such action as it deems appropriate in light of this opinion. If good faith compliance with the order to answer interrogatories is not accomplished within a reasonable time the case is to be dismissed.

The judgment entered herein is, therefore, set aside and the matter remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

All Justices concur.