Margaret C. GREENSTREET, Appellant,

v.

Beze CLARK, Jr. (same person as Ivan Junior Clark), Appellee.

No. 55575.

Supreme Court of Iowa.

Feb. 18, 1976.

Gary G. Taylor, Onawa, for appellant.

John D. Beardsley, Onawa, for appellee in the trial court.

Submitted to MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and HARRIS, JJ.

MASON, Justice.

This matter comes before us as a result of this court's order granting appellant, petitioner in a proceeding brought under chapter 252A, The Code, 1971, (Uniform Support of Dependents Law), permission to take an interlocutory appeal from the trial court's ruling granting respondent's demand for a jury trial on the issue of paternity.

The appeal presents two questions for review: (1) whether the issue of paternity may be determined in a support action brought pursuant to chapter 252A, The Code, 1971, and (2) whether a jury trial may be allowed under this chapter on the question of paternity.

Petitioner-appellant, Margaret C. Greenstreet, originally brought this equity case against her former husband, respondent-appellee Beze Clark, Jr., (same person as Ivan Junior Clark). Margaret was granted a divorce from Beze January 3, 1964. The decree made no mention of any children or pregnancy.

Some two months subsequent to the divorce, however, Margaret gave birth to a son, David William Greenstreet, in Sioux City. The birth certificate listed the father as Beze Ivan Clark, Jr.

December 22, 1971, Margaret and her representative, Assistant Monona County Attorney Gary G. Taylor filed a verified petition requesting support for David under chapter 252A, The Code, 1971. The petition alleged Beze is David's father and that the child was in need of support, and requested a fair and reasonable sum to be determined by the court.

January 10, 1972, Beze answered denying paternity of David. A day later, he filed a request for jury trial on the fact question whether he was David's father.

January 21 Margaret filed a resistance to this request which contended: (1) there was no paternity fact issue since paternity of a child "begotten in lawful wedlock is conclusively presumed"; (2) since chapter 252A does not provide for a challenge of paternity, a jury trial on the issue is not authorized in a support action under the chapter; and (3) paternity may be challenged only under chapter 675, The Code, 1971, wherein a jury trial is specifically allowed.

April 19, the trial court entered a ruling which provided Beze was entitled to a jury trial on the issue of paternity since the pleadings had created an issue of fact and Beze had complied with rule 177, Rules of Civil Procedure.

I. Since the proceedings herein, the legislature has amended chapter 252A by adding what is now section 252A.3(9), The Code, 1975:

"The natural parents of a child born out of wedlock shall be severally liable for the support of the child, but the liability of the

natural father shall not be enforceable unless he has been adjudicated to be the child's father by a court of competent jurisdiction, or he has acknowledged paternity of the child in open court or by written statement." Acts of the Sixty-fifth General Assembly, 1973 Session, chapter 190, section 2.

The question presented whether a court in a chapter 252A proceeding may adjudicate paternity (or whether the court is of "competent jurisdiction") apparently remains unanswered by the act, as the legislation is silent concerning a court's powers in this regard.

Chapter 675, The Code, 1971, entitled "PATERNITY OF CHILDREN AND OBLIGATION OF PARENTS THERETO," grants the right to trial by jury if so demanded in actions to establish paternity. Yet, the chapter is not the exclusive remedy. Section 675.7 provides:

"*Proceedings to establish paternity.* Proceedings to establish paternity and to compel support by the father may be brought in accordance with the provisions of this chapter. They shall not be exclusive of other proceedings that may be available on principles of law and equity."

Thus, since chapter 675 is not exclusive, chapter 252A proceedings might be capable of determining the issue of paternity, as "it is implicit from a review of the * * * provisions of our Uniform Support of Dependents Law, and the decision of other courts under like statutes, that the only real problem in such a proceeding is the *extent of the support required* of the respondent." (Emphasis supplied). *Beneventi v. Beneventi,* 185 N.W.2d 219, 223 (Iowa 1971).

At the outset, it would seem only logical that any question of paternity *must* be adjudicated, even in absence of the aforementioned 1973 amendment, before a respondent is required to furnish support. This court, however, has not previously confronted the instant issue. But, in any event, the court is guided by the following statement:

"In interpreting a statute, particularly when doing so for the first time, we seek the legislative intent in light of the wrong to be remedied and the purpose to be accomplished. We have expressed this principle in various ways, always, of course, with the ultimate goal of giving the statute a reasonable construction which will accomplish, rather than defeat, its purpose. * * [citing authorities]." *Domain Industries v. First Sec. Bank & Trust,* 230 N.W.2d 165, 169 (Iowa 1975).

The job of interpretation is aided by the decisions from other jurisdictions concerning similar provisions. As stated in *Engelson v. Mallea,* 180 N.W.2d 127, 131 (Iowa 1970), " * * * in 1955 Iowa amended its Uniform Support of Dependents Act by adding substantial portions of the Uniform Reciprocal Enforcement of Support Act, * * *." And since "the Iowa provisions * * * [are] almost identical to those enacted in other states, we may look to pronouncements by the courts in those states for a general interpretation of this special procedure. We find they have generally restricted the jurisdiction of the hearing *to a granting or denying of support * * *.*" (Emphasis supplied). *Beneventi v. Beneventi,* 185 N.W.2d at 223.

Unfortunately, the other jurisdictions which have interpreted their statutes in connection with the question whether paternity may thus be decided are not in agreement. As stated, however, those cases which take the affirmative view are, in our opinion, the more well reasoned.

Section 252A.3(8) is significant to any conclusion reached and has been enacted in like form in a number of states. It provides:

"Duties of support applicable under this chapter are those imposed or imposable under the laws of any state where the respondent was present during the period for which support is sought. * * *."

In *Yetter v. Commeau,* 84 Wash.2d 155, 156, 524 P.2d 901, 902, the Washington court framed the issue as: " * * * May

the factual question of paternity, as a prelude to a duty of child support, be resolved in a URESA [Uniform Reciprocal Enforcement of Support Act] proceeding?"

The court was " * * * convinced there can be no doubt that the duty of a putative father to support an illegitimate child or children is clearly one 'imposable' under the law of this state." 84 Wash.2d at 160, 524 P.2d at 904.

Thus, it was stated that " * * * in affording our URESA the liberal construction to which it is entitled, we believe the preferred result is that reflected in those jurisdictions which have held that a duty of support in instances such as this need not be established in an independent or ancillary court action, but may be resolved in a URESA proceeding. * * * [citing authorities]." 84 Wash.2d at 162, 524 P.2d at 905.

The court in *Yetter,* 85 Wash.2d at 158, 524 P.2d at 903, after observing, as this court did in *Beneventi,* 185 N.W.2d at 222, that URESA legislation was enacted in most, if not all, states and territories of the Union, declared: " * * * The purpose of such enactments was to provide a uniform, simplified, and convenient method whereby a dependent could obtain needed monetary support from another, obligated to provide such, by an interstate or, with the addition of provisions such as RCW 26.21.210, an intrastate proceeding. Being remedial in nature, such legislation is to be accorded a liberal construction, bearing in mind its humanitarian purpose. Every effort should be made by the courts to render it operable and effective. * * * [citing authorities].

"It is manifest, however, that to trigger and sustain a URESA proceeding there must exist an enforceable duty of support on the part of a respondent, * * *."

In *M__ v. W__,* 352 Mass. 704, 227 N.E.2d 469, it was held the determination of paternity was properly made under the Uniform Reciprocal Enforcement of Support Act, even though there exists in Massachusetts a quasi-criminal statute which "establishes

the civil duty of a natural father to support a child of his born out of wedlock."

Recently, the Oregon court, sitting en banc, decided the issue in favor of allowing determination of paternity in URESA proceedings.

" * * * Under the URESA the function of the trial court of the responding state * * * is to determine whether the respondent owes a duty of support and to provide for the enforcement of any duty so found. ORS 110.201 provides:

" 'If the court of the responding state finds a duty of support, it may order the respondent to furnish support or reimbursement therefore and subject the property of the respondent to such order.'

"ORS 110.021(2) defines 'duty of support':

" ' "Duty of support" includes any duty of support imposed or *imposable by law,* * * *.' [Emphasis supplied by court]. [See section 252A.3(8), The Code, 1971].

"Clearly then, the URESA authorizes both the finding and the enforcement of duties of support which have not been previously established in another proceeding.

"Moreover, in determining whether the respondent owes a duty of support to an illegitimate child, the court must necessarily first decide whether the respondent is the child's father. Therefore, since ORS 110.201 authorizes the circuit courts to find, as well as to enforce, a duty of support in a URESA proceeding, the statutory authority to establish paternity in that proceeding seems clearly implied.

" * * * Professor Brockelbank, chairman of the committee which prepared the URESA, has stated that courts which have jurisdiction to adjudicate paternity cases, such as our circuit courts, should not hesitate to exercise that jurisdiction in a URESA proceeding.

" ' * * * Suppose the defendant enters as his defense that he is not the father of the children for whom support is sought. If the court having jurisdiction of the support

case in the responding state is forbidden to decide paternity cases, that would seem to settle the matter. The Act gives the court no such jurisdiction. *However, the court having jurisdiction of the support case usually has a wider jurisdiction which includes adjudication of paternity. If it does, there is nothing in the Act which prevents its deciding the issue in the support case.* It would be dangerous to decide that the paternity issue could never be decided in the reciprocal case. If it were so decided, defendants would begin interposing such a defense as a subterfuge merely to avoid their obligations.' W. Brockelbank & F. Infausto, *Interstate Enforcement of Family Support,* 62 (2d ed. 1971). (Emphasis added.)" *Clarkston v. Bridge,* Or., 539 P.2d 1094, 1096–1097 (1975). This view also finds support in *Sardonis v. Sardonis,* 106 R.I. 469, 261 A.2d 22, 23.

Against this determination are *Nye v. District Court for County of Adams,* 168 Colo. 272, 450 P.2d 669 (1969); *Smith v. Smith,* 11 Ohio Misc. 25, 224 N.E.2d 925, 927 (1965). It is interesting to note, as did the court in *Clarkston,* " * * * the legislatures of both Colorado and Ohio enacted the revised version of the URESA to allow for a determination of paternity in their URESA proceedings." Or., 539 P.2d at 1097–1098.

▌ It thus becomes apparent that in jurisdictions considering the issue, more have allowed paternity determination than have not. And in light of section 252A.9, providing that "this chapter shall be so interpreted and construed so as to effectuate its general purpose to make uniform the law of the states which enact it", we hold the paternity issue is a proper subject of inquiry under our Uniform Support of Dependents Law.

II. Petitioner also contends the court erred by granting a jury trial on the question of paternity. As mentioned, a party to a chapter 675 proceeding has the right to demand a trial by jury. Chapter 252A, on the other hand, provides for no such procedure.

In section 252A.1 the legislature has declared that "the purpose of this uniform chapter is to secure support in *civil* proceedings for dependent wives, children and poor relatives from persons legally responsible for their support." (Emphasis supplied).

Hence, we are not helped in a determination of the present issue by those decisions from other jurisdictions dealing with the right to a jury trial in bastardy or filiation proceedings to establish paternity in view of section 675.18, The Code. See *Waddell v. State,* 235 Ark. 293, 357 S.W.2d 651, 94 A.L.R.2d 1126 and Annot., 94 A.L.R.2d 1128. Those cases considering the contention that the constitutional guaranties of the right to trial by jury to the accused in a criminal prosecution apply to bastardy proceedings do not aid us. It is also to be kept in mind that the common law afforded no effective remedy to compel performance, by one under a duty to support dependents in another state or to affiliate a bastard child.

We are not afforded the help of a respondent's brief seeking to uphold the ruling of the trial court.

In section 252A.6(1) it is provided that "a proceeding under this chapter shall be commenced by a petitioner, or a petitioner's representative, by filing a verified petition in the court in equity * * *."

"Chapter 252A is unquestionably a special procedure statute." *Beneventi v. Beneventi,* 185 N.W.2d at 222. Portions of the chapter are taken from the Uniform Reciprocal Enforcement of Support Act, which is "essentially equitable in nature." *M__ v. W__,* 352 Mass. at 710, 227 N.E.2d at 474, and authorities cited.

" * * * [T]he right to trial by jury is not absolute in all civil cases; there is generally not such right in special proceedings; and its denial violates no constitutional provision. *Hunter v. Colfax Consolidated Coal Co.,* 175 Iowa 245, 327, 154 N.W. 1037, 1067, L.R.A.1917D, 15, Ann.Cas.1917E, 803." *Danner v. Hass,* 257 Iowa 654, 658, 134 N.W.2d 534, 537–538.

■ It therefore becomes apparent under Iowa procedure, there is no right to trial by jury in special proceedings.

■ It must be conceded that the legislature by enacting section 252A.6(1) mandated that a proceeding under the Uniform Support of Dependents Law of this state be commenced by filing a verified petition in equity.

This court in *Grandon v. Ellingson,* 259 Iowa 514, 518, 144 N.W.2d 898, 901, has announced that, " 'Where an action is properly brought in equity the defendant has no right to a trial by jury of law issues presented in the answer, and the court will retain jurisdiction and determine the legal issues presented.' * * * [citing authorities]."

Earlier in the *Grandon* opinion, 259 Iowa at 518, 144 N.W.2d at 901, this statement of principle appears:

" ' * * * [O]nce equity has obtained jurisdiction of a controversy it will determine all questions material or necessary to accomplish full and complete justice between the parties, even though in doing so it may be required to pass upon some matters ordinarily cognizable at law.' * * * [citing authority]."

The foregoing principle is quoted with apparent approval in *Kriener v. Turkey Valley Community School Dist.,* 212 N.W.2d 526, 530 (Iowa 1973).

At another point in *Grandon,* 259 Iowa at 518, 144 N.W.2d at 901, this court announced that a defendant is not entitled to have an issue tried at law because it is the proper forum for his remedy when the plaintiff's remedy is in equity.

■ Under the foregoing rules respondent is not entitled in a Uniform Support of Dependents Law proceeding to have the question raised by his denial of paternity determined as an issue at law by a jury. Although sections 611.4 and 611.10, The Code, preserve the right to have purely equitable issues tried in equity even if they arise in ordinary proceedings, there is no statutory counterpart providing for a law trial of purely law issues arising in an equity matter. *Grandon v. Ellingson,* supra.

In view of the clear express legislative intent that a suit under chapter 252A is in equity we are not persuaded this court should adopt the reasoning employed in *Clarkston v. Bridge,* Or., 539 P.2d at 1098–1100, in reaching that court's conclusion a respondent in a proceeding under URESA has a right to a jury trial on the issue of paternity.

The trial court erred in granting respondent a jury trial.

For further proceedings consistent with this opinion the case is therefore

Reversed and remanded.