**STATE of Iowa, DEPARTMENT OF HUMAN SERVICES ex rel. Caleb HAMMONS, A Minor Child, Appellant,**

v.

**Frederick C. BURGE, Appellee.**

No. 92–1222.

Supreme Court of Iowa.

July 21, 1993.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Jeffrey D. Farrell, Asst. Atty. Gen., and Mark J. Rater, Asst. County Atty., for appellant.

Frederick C. Burge, Hamburg, pro se.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

The State of Iowa, as petitioner under the Uniform Support of Dependents Law, Iowa Code ch. 252A (1991), has appealed from an order of the district court setting child support and ordering collateral relief on behalf of the putative father. We reverse and remand.

The State filed a petition under Iowa Code chapter 252A against Frederick C. Burge, seeking an adjudication of paternity, child support, and medical assistance on behalf of a minor child. *See* Iowa Code § 252A.13. The court found that Burge was the father of the child and ordered him to pay support and to provide medical assistance.

In addition, the court ordered: (1) that Burge be allowed the income tax exemption for the child, (2) that the child's surname be changed from Hammons to Burge, and (3) that a visitation schedule be established for Burge. The State on appeal argues that the court (1) improperly set the amount of support by failing to include Burge's incentive pay in his income figure; (2) exceeded its power under chapter 252A by ordering visitation, tax exemption, and name change; and (3) erred in refusing to order support retroactive to the child's birth.

Caleb Hammons was born on June 13, 1990, to Stephanie Hammons, who was not married. The State provided assistance on behalf of Caleb, and through this chapter 252A proceeding sought recovery of those amounts as well as future support.

Burge's answer denied the assertion of paternity and suggested that another, unnamed man was the father. At trial, however, the results of Burge's blood tests established the probability of his paternity at 99.4%. Based on this evidence, the court found Burge to be the father, and this is not an issue on appeal. The court proceeded to set the amount of support under our child support guidelines.

Burge did not request any affirmative relief in his answer, but in a memo presented to the judge at trial, he asked for visitation rights, a change of name, and the right to claim Caleb as a dependent on his income tax return. The court complied.

## I. *The Support Amount.*

■ The State complains that the court erred in determining the amount of support by miscalculating Burge's income. The evidence showed that Burge's base pay was $9.33 per hour, or a gross of $1616 per month. However, when his incentive pay was added, his earnings were approximately $11.96 per hour. The trial court concluded that the child support payments should be set without regard to the incentive pay.

Burge consistently earned incentive pay. The average of four pay stubs placed in evidence was $11.89 per hour, or approximately $2060 per month. In fact, Burge's reported gross earnings of approximately $23,000 on his 1991 income tax return approximates the $2060 per month figure.

In *In re Marriage of Brown*, 487 N.W.2d 331 (Iowa 1992), the issue was whether overtime pay should be considered in calculating monthly income. We noted that overtime pay is ordinarily included in our guidelines as "monthly income," and nothing in the rules suggests that it should automatically be excluded. Unless it would result in injustice or would require the payor to work overtime in order to pay support, overtime pay would be included in calculating income. *Id.* at 333.

Here, there is no problem with burdening Burge by requiring him to work additional hours; his incentive pay was based solely on increased productivity, not overtime. It is not unjust to include Burge's incentive pay under these circumstances. Burge speculates that his earnings might be reduced in the future because of uncertainty in his employer's future plans. However, this is true in the case of most wage earners; future income is almost always speculative to some extent. In this case, Burge's substantial history of wages, which included incentive pay, provides a sufficient basis for computing his support payments by considering his total income. The court erred in reducing his income to exclude incentive pay.

We reverse and remand for computation of Burge's support based on his total income, including incentive pay.

## II. *Scope of Support Order.*

The second issue is whether the district court had the authority under chapter 252A to enter orders on collateral matters. The purpose of chapter 252A is quite circumspect. Section 252A.1 states:

The purpose of this uniform chapter is to secure support in civil proceedings for dependent spouses, children and poor relatives from persons legally responsible for their support.

■ Clearly, support for a dependent is the primary thrust of chapter 252A. However, because a father of a child born out of wedlock may not be held liable for support unless he has been adjudicated to be the father, Iowa Code § 252A.3(9), paternity may be adjudicated as a part of the chapter 252A proceeding. *See In re Marriage of Stogdill*, 428 N.W.2d 667, 670 (Iowa 1988); *Stearns v. Kean*, 303 N.W.2d 408, 412 (Iowa 1981).

A New York court, in a uniform support act case, noted the narrow scope of the uniform act:

Proceedings for the support of the child should not be frustrated by endless dispute over what is essentially a collateral

problem, namely, in whose custody does the child rightfully belong. The proceedings under the Uniform Support of Dependents Law are salutary in purpose, and are designed to be summary and direct. They do not provide a suitable forum to try out or determine issues more properly handled in a plenary action, or by way of appeal from or modification of existing judgments, or in habeas corpus proceedings. This is not to say that such issues may not become inextricably involved in a support proceeding, but when and if they do, they must not be permitted to defeat the primary and summary purpose of the proceeding.

*Aberlin v. Aberlin,* 3 A.D.2d 417, 421, 161 N.Y.S.2d 305, 309–10 (1957).

Throughout chapter 252A, references are made to "support" or "child support" without any reference to other issues such as visitation, name change, or tax exemption. In fact, nothing in chapter 252A suggests that issues other than paternity and support may be adjudicated by the court. This was the holding of *Beneventi v. Beneventi,* 185 N.W.2d 219 (Iowa 1971).

In *Beneventi,* the district court had ordered visitation rights for the father in a chapter 252A action, and we reversed. As we said,

> [i]t is implicit from a review of the ... provisions of our Uniform Support of Dependents Law, and the decision[s] of other courts under like statutes, that the only real problem in such a proceeding is the extent of the support required of the respondent. The issue of dissolving the bonds of matrimony certainly is not before the court and, while some of the evidence relevant to that issue might bear on the amount of support necessary for the children, it is nevertheless extraneous to the real issue of respondent's duty to furnish support for them. We do not believe the legislature, in adopting the Uniform Support Law, ever intended to include under chapter 252A the review or determination of the issues involved in a suit for divorce.
>
> As appellant contends in this appeal, the whole purpose of the law is to re-

quire a respondent to support his dependents to the extent of his ability to do so, and the legislature surely did not intend that the county attorney, a prosecuting official who is designated to represent the dependents in the proceeding, should be transformed into an attorney representing a private client in a divorce proceeding.

*Id.* at 223–24.

■ In the present case, we believe the same reasoning should apply. The county attorney, or assistant attorney general, designated by statute to be the representative of the claimant, should not be required to litigate issues, extending beyond paternity and support, which are more properly litigated in other forums. In fact, this mother, whose rights would be directly affected by orders for visitation, name change, and tax exemption, is not even a party to the case. A mother under such circumstances cannot be a "petitioner" for purposes of chapter 252A because she is not a "spouse." *See State ex rel. Warren v. Mahan,* 329 N.W.2d 673, 674 (Iowa 1983) (unmarried mother not "dependent" who may be petitioner under chapter 252A).

We conclude that the court's order insofar as it provided visitation, name change, and tax exemption was beyond the scope of its authority and the pleadings. We therefore reverse that part of the court's order and remand for entry of a revised decree.

### III. *Retroactivity of the Support Order.*

■ The State complains that the court should have ordered child support beginning on the date of Caleb's birth, not from the date of the filing of the chapter 252A petition, as it did.

Iowa Code section 252A.5(5) clearly recognizes liability for past support paid by the State. We recognized that in *Foreman v. Wilcox,* 305 N.W.2d 703, 704–05 (Iowa 1981). The date of birth, which is the date when expenses begin to accrue for the child, is the logical starting point for reimbursement, and we so hold. The court erred in commencing support reimburse-

ment on the date of the filing of this petition, and on remand, the decree should be modified accordingly.

**REVERSED AND REMANDED.**